GEORGE RICE, Appellant, *v.* JOHN D. ROCKEFELLER et al., as Trustees, etc., Respondents.

The stockholders and members of certain corporations and partnerships engaged in a similar business, by agreement in writing, created a trust, the object of which was to authorize the trustees to control and manage the business of the parties. The trustees issued to the parties trust certificates transferable on their books. By the terms of the agreement the parties thereto, and transferrees of the certificates, were the beneficiaries under the trust. By the terms of the certificates they were transferable only on the books of the trustees on surrendering the certificates, and it was provided that the holder of a certificate should be subject to all terms of the agreement or the by-laws adopted in pursuance thereof, as fully as if he had signed the same. Upon the back of each was a blank form for a transfer thereof by the terms of which the transferee was appointed attorney with authority to make the necessary transfer upon the books. These certificates were dealt in, in the open market in the city of New York. Plaintiff purchased in said market one of said certificates which was delivered to him with the transfer on the back made out to him by the person to whom it had been issued. Plaintiff presented the certificate to the trustees, with a demand that a transfer be made on the books and a new certificate issued to him, he offering upon receipt thereof to surrender the old certificate. The transfer was refused. *Held*, that an action to compel such transfer was maintainable; that while to give plaintiff the character of transferee for the purposes of recognition by the trust a transfer on its books was necessary, this was for the benefit and protection of the trust, and as by the agreement and the form of the certificate the quality of transferability was given to it this imported the right to make the transfer effectual by transfer on the books.

The complaint set forth the nature, effect and purpose of the agreement and the transferability of the certificates. These averments were admitted by the answer. The agreement and by-laws were not put in evidence. *Held,* it was not to be presumed that there was anything in the agreement qualifying the apparent right of plaintiff effectually to become a transferee.

The answer alleged and the trial court found that plaintiff was a competitor and rival of the parties to the agreement and had been engaged in transactions and proceedings hostile to them and to the trust. *Held,* that this did not justify the refusal to execute the transfer to him; also that in the absence of evidence that the relief sought might result unjustly or to the prejudice of the legal rights of the one in whose behalf the granting of it was opposed, plaintiffs motive in making the purchase was not legitimately a subject for consideration.

*Forrest* v. *M. S. & L. R. Co.* (4 De G., F. & G. 126), distinguished.

Where no discretionary power is expressly reserved, a corporation or company whose stock is on sale in open market has no right to so discriminate between *bona fide* purchasers of the stock as to deny to some of them the right to make their title effectual for recognition by the corporation or company in the manner provided for by it for that purpose, while allowing it to others; an apparent right to perfect the transfer as provided is an incident to the purchase.

*Rice* v. *Rockefeller* (56 Hun, 516), reversed.

(Argued February 8, 1892; decided October 1, 1892.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department entered upon an order made May 9, 1890, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term and affirmed an order granting a motion for a new trial.

The main purpose of the action was to require the defendants to transfer to the plaintiff upon their books six shares of stock in the Standard Oil Trust on the surrender of the certificates of such shares held by him. The Standard Oil Trust was created in January, 1882, by agreement in writing made or adopted by the stockholders and members of certain corporations and limited partnerships and certain individuals therein named or that might thereafter join in it at the request of the trustees. The stockholders and most of the other individuals making or adopting the agreement were interested as stockholders or otherwise in the mining, manufacturing, refining

and dealing in petroleum and its products, the materials used in the business and the business in some manner relating thereto. The trustees pursuant to the trust as provided for by such agreement, received from the parties making or adopting it certain bonds and stocks in trust and issued to them therefor Standard Oil Trust certificates transferable on the books of the trustees. And by virtue of the agreement the parties so surrendering their bonds and stocks for such certificates became the beneficiaries under the trust as did also the transferees of such certificates. The par value of the certificates which have been so issued from time to time by the trustees exceeded $90,000,000. And they have a regular market value and are dealt in in the open market in the city of New York, and were at the time of the commencement of this action held in considerable amounts by many persons who were transferees thereof and not parties to such agreement. One of the objects of the agreement creating the trust was to secure to the trustees the general supervision, so far as practicable, of the affairs of the various corporations, limited partnerships and manufactories coming within the adoption of the agreement.

The above is a statement substantially of facts alleged in the complaint and admitted by the answer. It further appears by the evidence and was also found by the court that on or about October 14, 1886, the plaintiff purchased in the open market in the city of New York, Standard Oil Trust certificate No. 1987 for five shares of stock duly issued to one L. B. Mallaby by the trustees and paid for it $190 per share in cash, and the certificate was thereupon transferred to him by Mallaby.

The following is a copy of the certificate and of the transfer indorsed upon it, to wit:

" Shares $100 each.

" STANDARD OIL TRUST.

" Number 1986.                      Shares 5.

" This is to certify that L. B. Mallaby is entitled to five shares in the equity to the property held by the trustees of the

Standard Oil Trust, transferable only on the books of said trustees on surrender of this certificate.   This certificate is issued upon condition that the holder or any transferee thereof shall be subject to all the provisions of the agreement creating said trust and the by-laws adopted in pursuance of said agreement as fully as if he had signed the' said trust agreement.

" Witness the hands of the president, secretary and treasurer of the board of trustees this 25th day of August, A. D. 1885, at the city of New York.

" WM. ROCKEFELLER,  *V. President*

" J. F. FREEMAN, *A. Treasurer.*

" H. M. Flagler, *Secretary.*"

Upon the back of is the following, to wit :

" For value received I hereby sell and transfer to George Rice of Marietta, Ohio, five shares of the Standard Oil Trust standing in my name on the books of said trust.   And I hereby irrevocably appoint said George Rice my attorney to make the necessary transfer upon the books of said trust in accordance with the regulations thereof and upon the conditions expressed on the face of this certificate.

" Dated *August* 26, 1885.            L . B. MALLABY.

" In presence of C. F. Streightoff."

After this purchase and prior to June 20, 1887, a stock dividend was declared by the trustees amounting to one share of stock for every five shares outstanding, and certificate No. 3057 for one share of the Standard Oil Trust stock was thereupon issued to Mallaby, who, about June 20, 1887, transferred it to the plaintiff.   This certificate and transfer indorsed upon it are in form the same as those above set forth.   And on January 20, 1888, the plaintiff, at the office of the trustees in the city of New York, made a formal written demand for the transfer to him of such six shares upon surrender of the certificates, which, with the transfers thereon indorsed, he then exhibited.   The following is a copy of the written demand :

" *To the Standard Oil Trust, No. 26 Broadway, New York, and its trustees, officers and agents :*

" You will take notice that I am the legal owner of certificate number 1987 for five shares, and certificate number 3057 for one share in the equity to the property held by the said trustees of the said Standard Oil Trust, and that each of said certificates was issued to L. B. Mallaby, and has been duly transferred by him to me, said original certificates and transfers being herewith exhibited to you. I hereby offer to surrender to you said certificates on receiving the new certificate hereinafter referred to, and do demand that you forthwith transfer said six shares to me on the books of said trustees of the Standard Oil Trust, and issue to me a new certificate therefor in my name.     GEORGE RICE.

" Dated NEW YORK, *January* 20, 1888."

The transfer to the plaintiff on the books was refused, and this action followed.

Further facts appear in opinion.

*Edward T. Bartlett* for appellant.

*Joseph H. Choate* and *Wm. V. Rowe* for respondents.

BRADLEY, J.   The defense is founded upon the propositions, (1) that the plaintiff failed to prove that he was a beneficiary under the Standard Oil Trust agreement, or entitled to become such by means of transfer upon the books of the shares represented by the certificates held by him, and (2) that he is not seeking such relation in good faith, but for purposes hostile to the trust, and for that reason is not entitled to the aid of the equitable powers of the court in that behalf.

The Standard Oil Trust represents a voluntary association. It was created by agreement of the stockholders of various corporations and others engaged or interested in a certain enterprise, and the several branches of business connected with and incidental to it. The effect of its creation is the concentration of supervisory power in nine trustees, whose certificates

of the trust are taken in place of the stock and bonds of the several corporations. The characteristic feature of it is in the voluntary surrender of the control and management of the business of those corporations, and in the fact that for its continuance, it has the capacity of succession. The agreement constituted not a partnership, but a trust in behalf of the beneficiaries. And while it is not a corporation, it, by the agreement, took some of the attributes of a corporation in so far that, through its trustees, certificates of shares in the equity to the property held by them were issued, and were transferable in like manner apparently as are those of corporations. They are transferable on the books of the trustees, and until that is done, it is said that the holder is not a beneficiary of the trust. And it is further urged that it does not appear that the plaintiff is entitled to that relation, because the right to transfer upon the books depends upon the provisions of the agreement and by-laws and compliance with them in that respect, and as they were not put in evidence, the conditions requisite for the purpose do not appear. It is true that the burden was with the plaintiff to show that he was entitled, within the meaning of the agreement and by-laws, to the relation of a transferee or beneficiary, and to have it perfected by transfer on the books. The fact that the shares were transferable and were for sale in the open market, enabled the plaintiff to become the holder of those he did purchase. It may be observed that, by the terms of the certificates, the shares appear to have been "issued upon condition that the holder, or any transferee thereof, shall be subject to all the provisions of the agreement creating said trust, and of the by-laws adopted in pursuance of said agreement as fully as if he had signed the said agreement." This relation of holder was given the plaintiff when he became such by taking the transfer from Mallaby. It is said that this does not constitute him a transferee, and that transfer on the books was essential to that relation and to make him a beneficiary. By the terms of the certificate, the holder and transferee are alike subject to the provisions of the agreement upon which the trust is

founded.   But to give him the character of transferee for the purposes of recognition by the trust the transfer on the books is requisite inasmuch as the shares are transferable only upon them.   This is for the benefit and protection of the trust. (*Bank of Utica* v. *Smalley*, 2 Cow. 770.)   The holder, as between him and his assignor, having the title, would seem in some sense to be a beneficiary of the trust since he is subject to all the provisions of the agreement on which it is founded and its by-laws.

The allegations in the complaint of what purport to be the nature, purpose and effect of the agreement, are, by the defendants' answer, admitted.   The fact thus appears that the shares are transferable on the books of the trustees.   From that arises the inference that the conditions were applicable alike to all purchasers and holders.   And this quality of the shares is recognized by the terms of the certificate and of the blank indorsement for transfer upon the back of and accompanying it, in which, when filled out, appears the name of the person designated by the transferer as his attorney to make the necessary transfer upon the books of the trust in accordance with the regulations thereof, and upon the conditions expressed in the certificate.   Those conditions are that the transferee shall be subject to all the provisions of the agreement creating the trust, and of the by-laws adopted pursuant to it.   The quality of transferability given to the shares would seem to import the right to make it effectual by transfer on the books, as that is treated as essential to accomplish it.   And when the plaintiff applied to have it done it may, in view of what appears in the indorsement upon the certificate as well as in it, be assumed that he sought to have the transfer made to him upon the books of the trust "in accordance with the regulations thereof," and upon the conditions in the certificate.   They seem to relate to the manner and effect of doing it, and not to the right to have it done.   And, therefore, when the essential fact of the transferability of the shares and the general nature and purpose of the trust as created by the agreement were made to appear, as they did by the admitted allegations of the com-

plaint, there was nothing wanting in the evidence to establish the right of a holder of shares to effectually become a transferee. And it cannot be presumed that there were in the agreement any negative provisions qualifying such apparent right. If there were any such it was for the defendants to make it appear.

In *Burrall* v. *Bushwick R. R. Co.* (75 N. Y. 211), the question arose upon demurrer to the complaint, which did not allege any facts tending to show that transfer of shares of stock on the books of the company was requisite to perfect it, and it was held that if it was not no transfer upon them was necessary for such purpose. The defendants here claim that the holder of shares in the trust is not entitled to recognition as such, or as transferee, until transfer is made on their books, and, accordingly, it appears that they declined to treat him as a beneficiary for the purpose of receiving dividends upon the shares he had purchased, but paid them to Mallaby, who was named in the certificate as such, and as the consequence the plaintiff was not permitted to take any dividends or rights as holder of the shares otherwise than through him. The denial of the right to transfer upon the books is not consistent with the transferable quality of the shares, which imports that the purchaser taking an assignment of them in a duly formal manner has the right to become a transferee within the meaning of the agreement upon which the trust was formed. And it is difficult to see any substantial distinction in that respect between a holder of such shares and of those of a corporation, which are transferable only upon its books. In such case it is within the equitable power of the court to compel such transfer to be made. (*Cushman* v. *Thayer M. J. Co.*, 76 N. Y. 365.) And unless some further reason appears for the denial of such right the plaintiff was entitled to such relief in this action.

It is evident from what appears that the ground of the refusal of the defendants to grant the plaintiff's request to make the transfer on the books was personal to him. And they, amongst other matters by their answer, charge in effect

that the plaintiff, as competitor of the companies whose stock is held by the defendants in trust, in the business of manufacturing and dealing in oil products is hostile to them, and that his demand for transfer of his shares on the books of the defendants is not in good faith, but that he seeks to vex and harrass them. Upon that subject the trial court found that since in 1876 the plaintiff has been a competitor and rival of the constituent corporations of the Standard Oil Trust, and since its creation he has been such of the trust in the business of oil refining, and has maintained a hostile attitude and been engaged in hostile transactions and proceedings towards those companies, the trust and the defendants as trustees, that he believes an oil trust ought not to exist, and is opposed generally to trusts of that character, and that since that time to the commencement of this action he has been prosecuting or aiding in prosecuting litigations and proceedings in courts as well as before the interstate commerce commission, and before an investigating committee in congress, directed mainly and in effect against such corporations or the trust for the purposes of securing from the railroads what he considered equal rates with those corporations and such trust for carrying his products. The court also found that the plaintiff "having for ten or more years been engaged in the oil refining business at Marietta, Ohio, had suffered from discrimination in freight rates for the transportation of oil by various railroad companies against him and in favor of his competitors in the trade; that the litigations instituted by him before the interstate commerce commission against a number of railroad companies were conducted by the plaintiff in good faith and for his protection from unjust discrimination against him on freight charges by them in such transportation; and that in quo warranto suits of the state of Ohio against certain named railroad companies it was found as a fact and determined by the referee in each of them that a discrimination in freight rates for transportation of oil existed greatly to the injury of the business of the plaintiff in this action; and that his connection with those suits "was in good faith wholly justifiable and in the protection of

his legal rights." The facts so found by the court in the present action had, the support of evidence. And it also appears that the plaintiff proposed and offered to sell his oil property and works to the defendants for a sum greatly in excess of their value, and that in December prior to the creation of the trust he published a severe pamphlet against the Standard Oil Company, which became one of the constituent companies of the trust. In this publication he manifested his hostility to the company for reasons, as expressed in it, having relation to its rival business methods which he charged were conducted in a manner and with a purpose to injure and oppress him in his business of like character. In view of all these facts it is urged by the defendants that the motives of the plaintiff in seeking to become a recognized member of the association and beneficiary of the trust, were such as to justify the refusal to permit him by transfer of his shares on its books to take such relation to it. The question of motive of the plaintiff so far as it had any essential bearing in the case was one of fact. And upon that subject the plaintiff testified that he had no hostile purpose in purchasing the shares and in seeking a transfer of them on the books, but that it was his "idea if possible to become a record stockholder in order to enjoy the ordinary legal rights of a stockholder." And the trial court determined that there was nothing in the relations of the plaintiff to the defendants and the trust that should prevent such transfer on the books of the defendants. The plaintiff purchased the shares in the trust with his own money, and he represents no interests or purposes other than his own in this action. His claim is founded upon a right of property lawfully acquired. He, as holder, became subject to the agreement by which the trust was created and its by-laws, and if the transfer to him is perfected he will necessarily continue in such relation of subjection to them. When no discretionary power is reserved to that effect there is not, nor should there be any rule of law which will enable a corporation or company whose stock is on sale in the open market to so discriminate between *bona fide* purchasers who invest money in it for their

own benefit, as to deny to some of them the right to make their title effectual for recognition by the company in the manner provided by it for that purpose. The perfection in such case of the transfer is one of apparent right incident to the purchase, and which the holder who thus acquires the stock in the market is permitted to assume will be effectuated. (*Weston's Case*, L. R. [4 Ch. App.] 20.)

A discretion in that respect when given or reserved by the articles under or pursuant to which the company is organized or in any manner requisite to vest the power in those charged with its executive duties may be effectually exercised. (*In re Stranton, etc., Co.*, L. R. [16 Eq. Cas.] 559; 7 Moak, 581; *Moffatt* v. *Farquhar*, L. R. [7 Ch. Div.] 591; 23 Moak, 731.)

In the present case no such discretionary powers seem to have been vested in the trustees. And the purchase of the stock was open to the plaintiff and fairly made by him. Attached to it was the quality of transferability, and with it was presumptively the right of the beneficial holder to have recognition as such by means of transfer to him on the books of the trust. And this was essential to the protection of his rights derivable from the title. The remedy sought by the plaintiff is within the equitable powers of the court, and is founded upon an indubitable title, as between him and his vendor, and a right in property. In such case it is difficult to see that motive legitimately becomes a subject of consideration unless the relief in view may for that reason result unjustly to others in whose behalf it is resisted, or to the prejudice of their legal rights. (*Bloxam* v. *Metropolitan Ry. Co.*, L. R. [3 Ch. App.] 337; *Ramsey* v. *Gould*, 57 Barb. 398, and cases there cited.) And how that could be the consequence is not evident. The transfer on the books to the plaintiff does not change the identity of the shares, but merely substitutes for one another beneficiary, and the latter is subject to the trust agreement and by-laws. It is true that equitable considerations not recognized in courts of law may control results in courts of equity. And while the granting of relief there is in some sense matter of dis-

cretion, it is not an arbitrary or capricious, but a sound judicial discretion controlled by established principles in equity and exercised in view of the circumstances in each case. (3 Pom. Eq. Jur. § 1404.) The party seeking relief must come into court with clean hands, as such maxim is understood in its application to that relation. If, for instance, he appears there under false colors his complaint may for that reason be dismissed. Such was the case of *Forrest* v. *Manchester, etc., Ry. Co.* (4 De G., F. & G. 126). There a party filed his bill in behalf of himself and all other shareholders of the defendant company to restrain it from running its vessels, etc. It appeared at the trial that he was also a shareholder in a rival company; that by its direction he instituted the suit, and by it was indemnified against costs. The bill was dismissed; and on review the lord chancellor, in holding that the bill was an imposition on the court and sustaining its dismissal, said : " It is not that they persuaded him to institute the suit, not that they instigated the suit, but that the directors of the other company have directed the suit, and are to indemnify the plaintiff against the costs of it. To use a familiar expression, the plaintiff is the puppet of that company." And he added : " I have nothing to do with the motives of plaintiffs suing in this court. If they come here in a *bona fide* character, the reason for their coming here is a matter beyond the province of a court of justice to inquire into." In the present case the plaintiff's claim to relief is founded upon his own title to the shares in question, and the action was instituted and prosecuted solely for his own benefit. The relief by way of transfer of his stock upon the books of the trust is not of itself unconscionable. Nor is it seen how it can be prejudicial to any legal rights of the defendants or any other beneficiary. It is not so much to the perfected title in the plaintiff of the shares that the defendants object, as it is to the relation which he will as the consequence of the transfer on the books take to the trust. Nor so much to relief in his behalf as in the alleged apprehension of consequences which may follow its execution. And those are dependent upon the manner he may conduct himself

in that relation, whether offensively or otherwise. Whether the plaintiff would seek to do anything other than that which legitimately pertained to the right of a stockholder is entirely speculative; and it is not seen that anything more than that could be accomplished by him in such relation. The objection before mentioned might be made against any holder of stock, and the reason for its support would be one of degree. It has no relation to the plaintiff's legal right founded upon his title; but the court is called upon to make inquiry beyond that and into his motives or purposes by which his conduct and actions towards the trust may be influenced if he becomes its recognized beneficiary. As said by a learned text writer: "When a court of equity is appealed to for relief it will not go outside of the subject-matter of the controversy, and make its interference to depend upon the character and conduct of the moving party, in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands." (1 Pom. Eq. Jur. § 399.) Assuming that there may be reasons for denial of relief in an action within equitable jurisdiction there sought, and founded upon unquestionable title fairly obtained, they must be such as to make it appear that the relief may result oppressively or to the undue prejudice of the defendant. In the case at bar the plaintiff's title to the stock derived from his purchase is not challenged by the evidence, but the ground of the defense is in the standing of the plaintiff in his relation to the trust, of which the defendants are trustees. And this is based upon the fact that his was an attitude of hostility to the Standard Oil Company, and after its creation to the Standard Oil Trust, arising out of rivalry in business. This may be a reason for making his recognition as a beneficiary undesirable. But while there may be an inherent power or discretion in the trustees of a corporation or company when its due protection requires or justifies it to decline to perfect title to stock by transfer on the books, it cannot be supposed, unless the power is duly reserved to or conferred upon them, that they are for that purpose permitted to discriminate between *bona fide* purchasers, who are

owners and holders of its stock having assignment duly and in due form made to support application for such transfer. And in view of the facts found by the trial court and the preponderance of evidence, as we view it, there seems to be no sufficient reason founded upon the plaintiff's relations to the defendants or to the trust or otherwise, to fairly justify a denial to him of the rights of any holder in good faith of the stock of the trust.

The suggestion that the plaintiff should not have equitable relief because he has an adequate remedy at law for damages requires no consideration, as that question does not appear to have been specifically raised upon the trial or for determination of the trial court.

And in view of the fact that the shares of the trust were unqualifiedly transferable, there seems, for the purposes of the relief, to be no practical or substantial reason to distinguish between them and those of a corporation. There are no exceptions requiring special consideration. These views lead to the conclusion that the order of the General Term should be reversed and the judgment entered on the decision of the Special Term affirmed.

All concur.

Order reversed and judgment affirmed.