The order appealed from, therefore, is reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

Present — INGRAHAM, P. J., McLAUGHLIN, CLARKE, SCOTT and DOWLING, JJ.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.

---

JAMES POLLITZ, Respondent, *v.* THE WABASH RAILROAD COMPANY and Others, Appellants, Impleaded with FREDERIC A. DELANO and Others, Defendants. (Action No. 1.)

First Department, May 31, 1912.

Corporations — stockholder's action attacking plan for issue of preferred stock and exchange of securities — defenses — demurrer — ratification by stockholders of illegal corporate acts — motives of plaintiff — estoppel — non-joinder of parties defendant — partial defense.

The plaintiff, a stockholder of the defendant, the Wabash Railroad Company, attacked the validity of a plan for the issue of bonds and stock of the corporation in exchange for $30,000,000 of its debenture bonds outstanding, upon the ground that the proposed plan was *ultra vires* and actually illegal, in that the Constitution of one of the States under whose laws the corporation was organized prohibits the issue of preferred stock

except upon the consent of all the stockholders, whereas the plan in question, which provided for the issue of preferred stock, was not so approved; that the new securities were not to be exchanged for property equal in value to their par value, as required by law, and that the directors voting for the plan were the holders of debenture bonds, and so personally interested. Four affirmative defenses were interposed: (1) That the plan was ratified by a majority of the stockholders; (2) that the plaintiff knew of the plan when he purchased his stock, and that he acquired it for the purpose of bringing this action; (3) that the plaintiff, when once protesting against the plan, at the time of its adoption, and again in certain actions brought by him after that time, failed to state the same grounds of invalidity which he now asserts; (4) that the purchasers of the new bonds and stock issued under the plan are necessary parties.

*Held,* that the plaintiff's demurrers to each of the defenses should be sustained.

An illegal corporate act cannot be ratified by a majority of stockholders.

Where a stockholder has a legal right to question certain corporate acts and a personal interest in obtaining the judgment which he seeks, his motives will not be made the subject of inquiry.

The rule which holds a suitor to his once stated objections, when asserting the default of a party with whom he has contracted, has no application as between the directors of a corporation and a stockholder insisting upon his legal right to the protection of his interests against an ill-advised or illegal act of the corporation.

Non-joinder of parties defendant, pleaded as a complete defense, is demurrable where the facts alleged are effective only as a partial defense.

APPEAL by the defendants, The Wabash Railroad Company and others, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of January, 1912, upon the decision of the court rendered after a trial at the New York Special Term, sustaining the plaintiff's demurrers to separate defenses set forth in the respective answers of the appellants.

*Rush Taggart,* for the appellants.

*J. Aspinwall Hodge,* for the respondent.

Judgment affirmed, with costs, with leave to defendants to answer on payment of costs, on opinion of BISCHOFF, J., at Special Term.

Present — INGRAHAM, P. J., MCLAUGHLIN, LAUGHLIN, MILLER and DOWLING, JJ.

The following is the opinion delivered at Special Term:

BISCHOFF, J.:

The plaintiff, a stockholder of the defendant, the Wabash Railroad Company, attacks the validity of a plan for the issue of bonds and stock of the corporation in exchange for $30,000,000 of its debenture bonds outstanding. This plan, as alleged, provides for the exchange of $795 of new bonds, $580 preferred stock and $580 common stock for each $1,000 par value of debenture bonds, classed as series A, and for the exchange of $720 of new bonds, $520 preferred stock and $520 common stock for each $1,000 par value of debenture bonds series B. The ground of attack, as indicated by the complaint, is that the proposed exchange of securities was *ultra vires* the corporation and actually illegal in that the Constitution of the State of Missouri, one of the States under whose laws the corporation was organized, prohibits the issue of preferred stock except upon the consent of all the stockholders, whereas the plan in question, which provides for the issue of preferred stock, was not so approved; further, it is alleged that the proposed issue of bonds and stock is fictitious and contrary to the statutes of the several States applicable to the conduct of business by the defendant corporation, in that the new securities were not to be exchanged for property equal in value to their par value, the debenture bonds to be taken in exchange being worth less than par; the complaint also contains averments indicating that directors voting for the plan were the holders of debenture bonds and so personally interested, in hostility to the interests of the corporation.

Four affirmative defenses are interposed, and the issue of law before me is presented by demurrer to each defense for insufficiency of substance.

By the first defense ratification of the plan by a majority of the stockholders is asserted. Whether or not the facts alleged in this defense as to the history of the transaction may be deemed to afford a sufficient basis for an effective ratification of the acts of directors who were personally interested, there can be no doubt that the illegality of the plan, so far as it provides for the issue of preferred stock without the consent of all the stockholders, is not affected by anything which the defense

contains.   Admittedly, preferred stock is planned to be issued without the unanimous consent which the Constitution of Missouri requires, and as the pleadings stand the words of the Constitution, taken as correctly stated in the complaint, are that "no corporation shall issue preferred stock without the consent of all of the stockholders." Here appears to be an absolute prohibition of an act which is integral to the plan now attacked, and ratification by a majority of the stockholders could not make that act valid since the very law itself defines the extent of the ratification required.   An illegal corporate act cannot be ratified by majorities of stockholders. (*Taylor* v. *Earle,* 8 Hun, 1.)   I find no force in the contention that this explicit provision of the Constitution of Missouri may be limited to an original issue of preferred stock as distinguished from an issue of increased preferred stock.   Thus the statutes of Missouri, as alleged, provide: "Any corporation may increase its capital stock or its bonded indebtedness with the consent of the persons holding the larger amount in value of the stock," but this enactment does not serve in any way to suggest a limited meaning of the constitutional provision.   If there were an inconsistency, the statute would, of course, give way in view of the clarity of expression employed in the Constitution, but there is no inconsistency.   The statutory provision relates to an increase of capitalization generally, while the Constitution calls for unanimous consent of the stockholders where a distinction is to be made between classes of stock to represent the adopted or increased capitalization.   It is unnecessary to differentiate between the laws of Ohio and Missouri upon the question of the legality of the issue of preferred stock.   From the admitted allegations of the complaint, this corporation was bound by the laws of Missouri as well as the laws of Ohio, and the mere fact, as alleged in this defense, that the meeting at which the plan was adopted was held in Ohio, does not affect the question. Undoubtedly the meeting, called in conformity with the laws of Ohio, was regular, but the corporate acts had to conform to all the laws under which the corporation was empowered to act at all.   The fact that the plan in question involves the doing of an act which was prohibited by laws applicable to the dealings of the defendant corporation is thus apparent from the com-

plaint, and the first separate defense contains nothing to meet the plaintiff's case for relief against the carrying out of the illegal transaction. The demurrer to this defense is, therefore, to be sustained.

The second defense is to the effect that the plaintiff knew of the matters to which his complaint is directed when he purchased his stock and that he acquired his holdings as a mere interloper for the purpose of bringing this action and to compel the defendants to purchase immunity from litigation by taking over his stock at an excessive price. While there are intimations in some cases that a court of equity will inquire into the plaintiff's motives when acquiring stock which is made the basis of his right to bring a derivative action of this character (*Sayles* v. *Central Nat. Bank of Rome*, 18 Misc. Rep. 155; *Kingman* v. *R., W. & O. R. R. Co.*, 30 Hun, 73), the actual rule when applied in cases disclosing an obviously ulterior motive in bringing the suit is that if the plaintiff shows a legal right to question the corporate acts and has a personal interest in obtaining the judgment which he seeks, his motives are not to be made the subject of inquiry. In other words, that his purpose in enforcing his actual rights in a derivative action does not present a question of good faith with which equity is concerned. (*Ramsey* v. *Gould*, 57 Barb. 398, 402; *Young* v. *Drake*, 8 Hun, 61; *Rice* v. *Rockefeller*, 134 N. Y. 174, 186.) The *Kingman* case, above cited, proceeded upon the rule adopted in the Federal courts as to the effect of a plaintiff's acquirement of stock after the acts sought to be disaffirmed were committed, which rule is no longer followed in this State. (*Pollitz* v. *Gould*, 202 N. Y. 11.) My conclusion is that the second defense is insufficient in substance.

The third defense is that the plaintiff, when once protesting against the plan, at the time of its adoption, and again in certain actions brought by him after that time, failed to state the same grounds of invalidity which he now asserts. I do not find any element of estoppel in the facts so presented. The rule which holds a suitor to his once stated objections, when asserting the default of a party with whom he has contracted, has no application. That rule proceeds upon the ground that when the day for the performance of a contract arrives and

one party asserts a specific reason for claiming the other party's default, additional grounds which might have been obviated, if stated, should be deemed waived because the party whose default is alleged had no reason to believe that the grounds not stated were actually in question and to be met. As between the directors of a corporation and a stockholder insisting upon his legal right to the protection of his interests against an ill-advised or illegal act of the corporation, no relation exists which calls for the application of the rule referred to. Indeed, the defense does not suggest that the form of the plaintiff's protest or his omission to state all of his grounds of attack had or could have had any effect upon the vote taken for the adoption of the plan and in so far as he omitted his present ground from suits afterwards instituted, he was certainly under no duty to the defendants to frame his actions, brought for his own protection, in any particular manner, except so far as he might be precluded by a defense of a former adjudication, a matter not involved in the averments before me. The third defense is, therefore, demurrable.

The proposition sought to be maintained by the fourth defense, that purchasers of the new bonds and stock issued under the plan in question are necessary parties, has been distinctly negatived upon demurrer to the complaint (*Pollitz* v. *Wabash R. R. Co.*, 142 App. Div. 755), and the allegation of non-joinder of these parties presents no matter of defense to the cause of action. If, as contended by the defendants, the omission of such parties is to limit the scope of the judgment to be rendered, and is a ground available to these defendants, then the facts alleged are effective only as a partial defense, and the allegations, framed as presenting a complete defense, are open to demurrer.

For the reasons stated, the demurrers are severally sustained to each of the four separate defenses set up by the answers, with costs, with leave to defendants to amend upon payment of costs within twenty days.