SEAGIRT REALTY CORP., Plaintiff, *v.* JACK CHAZANOF, Defendant.

Supreme Court, Special Term, Queens County, May 18, 1962.

*Hein, Bradie, Waters & Klein (Philip Waters* of counsel), for plaintiff. *Young & Young (Murray Weiss* of counsel), for defendant.

ANTHONY M. LIVOTI, J. This is an action to impress a trust and to compel defendant to execute and deliver a deed to certain real property.

On April 10, 1934, Jacob Landau was the sole stockholder of Amstel Arverne Realty Corp. On that day he had the corporation convey to his son Abraham Landau, also known as Alfred Landau, a parcel of land, irregular in shape but approximately 60 feet wide and from 98 to 140 feet deep.

At the time of this conveyance Jacob and his son made an oral agreement that Jacob was to be the actual owner of the property, and that his son at any time upon Jacob's request would convey the property back to him or to any person designated by him.

In 1950 part of this land was leased to the defendant, who is Jacob's son-in-law.

On June 28, 1950, at Jacob's request, his son conveyed the southerly portion of this parcel to the defendant. This conveyance was without consideration and title was placed in defendant's name solely for the purpose of permitting him to file plans to erect a building at his own expense to be used in his own business. At the time of the conveyance plaintiff claims that defendant agreed to execute a deed conveying the property back to the plaintiff corporation of which Jacob is the sole stockholder. Defendant executed and delivered such a deed to the plaintiff, but it was never recorded, and has been mislaid or lost. Plaintiff has requested defendant to execute another deed, but defendant has refused.

From 1950 to April, 1961 defendant paid rent monthly to the plaintiff, and plaintiff paid the taxes and other charges. At first the rent was $30 per month. In 1955 the rent was raised to $50 per month. In 1961 plaintiff sought to increase the rent to $100 per month and when defendant refused to pay that sum plaintiff brought a summary proceeding in the Municipal Court to dispossess him.

In his answer to the petition in that proceeding defendant entered a general denial and two affirmative defenses. The first defense was that the property was subject to the rent control laws. The second defense was that defendant had tendered the rent. Defendant made no claim, however, that he owned the property.

On May 18, 1961, the summary proceeding was settled pursuant to a stipulation made in open court whereby the parties agreed to make a 10-year lease, the rent to be $75 per month until April 30, 1966, and $100 per month thereafter.

The parties were to go to the office of plaintiff's attorney to sign such a lease, but instead defendant and his wife and their attorney went to the Register's office where they "searched the records and found that we were still registered as the owners of this piece of property."

On the trial of this action defendant denied that he ever made any agreement to reconvey the property back to Jacob. He testified that his father-in-law "was interested in seeing me get ahead." He further denied that he ever executed a deed to Jacob.

William Katz, an attorney who has practiced in the Rockaways for many years, and who enjoys an excellent reputation in this county, testified that while he had no present recollection of his conversations with Jacob, his office records show that he prepared three deeds for Jacob, one from Jacob's son to Seagirt Realty Corp., the second from the son to the defendant, and the third from the defendant to the plaintiff, Seagirt Realty Corp. His office copies of the deeds were not conformed but were all dated the blank day of June, 1950.

Mr. Katz further testified that defendant came to his office and executed the deed in which he was the grantor. Mr. Katz retained this deed as well as some other papers until May 18, 1951. On that day, according to a receipt in Mr. Katz' file, Jacob called at his office and picked up two deeds, one lease, and a blueprint. Jacob first became aware of the fact that he no longer had the deed from the defendant in June, 1960.

The credible evidence in this case preponderates in favor of the plaintiff. Defendant has alleged various affirmative defenses, only one of which merits discussion.

Defendant contends that Jacob sought to defraud his creditors when he conveyed the property to his son in 1934 and that he concealed assets in bankruptcy in 1945 and that, therefore, he should not now be aided by a court of equity. It is elementary that a grantor who conveys property to defraud his creditors cannot recover it. (*Pattison* v. *Pattison,* 301 N. Y. 65.)

This doctrine of clean hands is limited, however, to the transaction at issue. The court will not refuse its aid to a man merely because he has been guilty at some previous time of misconduct unconnected with the matter in litigation. A court of equity is not an avenger at large. (2 Pomeroy, Equity Jurisprudence [5th ed.], § 399; *Rice* v. *Rockefeller,* 134 N. Y. 174, 187.)

In the instant case, if Jacob was defrauding creditors in 1934 or concealing assets in bankruptcy in 1945, he had already acomplished his purpose. The transfer to the defendant in 1950 was not made to defraud creditors and defendant cannot avoid fulfilling his obligations merely because Jacob may at some time some 5 to 16 years earlier have been guilty of a fraudulent scheme. The property did not become contraband so that Jacob could never deal with it again.

Judgment is granted in favor of the plaintiff as prayed for in the complaint.