RICHARDSON, Administrator, Appellant, v. BUSCH.

**In Banc, June 30, 1906.**

1. **CONVERSION: Title: Authority of Public Administrator.** Where the public administrator sues a defendant for damages for having wrongfully converted to his own use certain certificates of stock belonging to a deceased, the issue is the question of title for the thing sued for, and not one of authority in the public administrator to take charge of the estate of a decedent who died in another State. And, therefore, the point of whether or not the public administrator's authority can be attacked in a collateral proceeding has no place in the case.

2. ————: **Pleading: Demurrer: Admission.** Where the public administrator's petition in general words charges conversion, but in addition by specific averments charges how the conversion was accomplished, and that averment is that defendant had in his possession certain certificates of stock in a foreign corporation and delivered them to the decedent's administrator in the State where decedent died, there is nothing in the petition from which it can be inferred that the certificates were lost to the estate, and hence a demurrer does not admit a state of facts on which defendant would be liable as for conversion.

3. **ADMINISTRATION: Stock: Foreign Corporation: Place of Ownership.** Decedent was the holder of 500 shares of stock of a New York corporation, and when the corporation was sued in attachment in Missouri delivered the certificates to defendant to indemnify him against his liability as surety on the attachment bond. While the attachment suit was pending, decedent died in New York, and plaintiff as public administrator immediately took charge of his estate in Missouri. Thereafter

the attachment suit was dismissed, and defendant's liability on the bond ceased, and plaintiff demanded of defendant the certificates of stock, but defendant refused, and plaintiff sues him for damages as for conversion. *Held*, that, the certificates being not the stock but mere evidence of the ownership of the stock, the stock itself was not in Missouri when decedent died, and plaintiff had no right to claim the certificates.

4. ———: ———: **Place of Ownership.** Certificates of stock are only evidence of the ownership of the stock. The stock belongs to the administrator in the State where the owner died. The mere fact that certificates of stock of a New York corporation were in Missouri when the owner died in New York does not give the courts of this State the right to seize that stock. The stock itself, in such case, is beyond the process of the courts of this State. The certificates left in this State could not be applied to the payment of decedent's debts here or to distribution among his kin.

5. ———: ———: **Papers: Statute.** The word "papers" used in the statute (sec. 292, R. S. 1899) authorizing the administrator to take charge of the "money, property, papers or other estate" of deceased persons, refers to papers which constitute the assets or part of the assets of the estate-papers in which there is a property value.

6. ———: ———: **Right to Administer: Debts.** The right of the public administrator to take charge of an estate is not dependent on what is to be done with the proceeds at the end of the administration, but on the fact that there was property in this State at the time of his death belonging to deceased. The interests of distributees are as important as those of creditors. The mere fact that debts exist is no ground for administration.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*Rassieur, Schnurmacher & Rassieur* for appellant.

(1) The authority of plaintiff, as public administrator, to administer the estate and to maintain this action, is not open to collateral attack; the probate court alone has jurisdiction in a direct proceeding to question his power. Leeper v. Taylor, 111 Mo. 312;

Vermillion v. Le Clare, 89 Mo. App. 55. (2). Letters of administration have no extra-territorial force. A New York administrator could not sue in our courts for the possession of the stock nor recover from defendant for conversion thereof. He would have no legal capacity to maintain any action whatever in Missouri respecting the stock. Naylor v. Moffatt, 29 Mo. 126; May v. Burk, 80 Mo. 675; McPike v. McPike, 111 Mo. 216; Gregory v. McCormack, 120 Mo. 657; Wolf v. Ins. Co., 75 Mo. App. 306, 22 Am. Dig. (Century Ed.) 3311. (3) A local administrator may pass the legal title to shares of stock in a foreign corporation. Middlebrook v. Bank, 41 Barb. 481, affirmed 3 Abb. App. Dec. 295; Hutchins v. Bank, 12 Met. (Mass.) 421; Luce v. Railroad, 63 N. H. 588; Brown v. Gas Light Co., 58 Cal. 426; In re Navig. Co., 51 N. J. L. 78. (4) While certificates or shares of stock are not, *strictissimi juris*, negotiable paper, they approximate it as nearly as possible, and a mere delivery of such certificate, properly indorsed, transfers to the assignee the title to the shares anywhere, whether in the domicile of the corporation or elsewhere. Trust Co. v. Lumber Co., 118 Mo. 458; Withers v. Bank, 67 Mo. App. 115; McAllister v. Kuhn, 96 U. S. 87; Bank v. Lanier, 11 Wall. (78 U. S.) 369; Brown v. Gas Light Co., 58 Cal. 426. (5) The wrongful refusal to surrender the certificates of stock amounted to a conversion by defendant, for which an action will lie. Withers v. Bank, 67 Mo. App. 115; McAllister v. Kuhn, 96 U. S. 87. (6) The following choses in action have been held to be "assets" or "property" or "goods and chattels" sufficient whereon to base the right of ancillary administration: (a) Simple debts owing to the non-resident deceased by debtors within the State where such ancillary administration is applied for. McCarty v. Hall, 13 Mo. 480; Becraft v. Lewis, 41 Mo. App. 546; Equitable Life Assur. Society v. Vogel, 76 Ala. 441; Henderson v. Clarke, 14 Ky. 277; Hyatt v. James, 71 Ky. 9; Still v. Woodville, 38 Miss.

646; Smith v. Monroe, 23 N. C. 345; Appeal of Picquet, 22 Mass. 65; Pinney v. Gregory, 102 Mass. 186; Swancy v. Scott, 28 Tenn. 327; Stearns v. Wright, 51 N. H. 600; Kohler v. Knapp, 1 Bradf. Sur. 241; In re Hopper, 5 Dem. Sur. 242. (b) Specialty debts wherever the specialty may happen to be at the time of the owner's death. Beers v. Shannon, 73 N. Y. 292; Fletcher v. Sanders, 7 Dana (Ky.) 351; Grace v. Hannah, 51 N. C. 94. (c) A suit for unliquidated damages pending at the death of the non-resident, even though the suit afterwards result unfavorably. Robinson v. Epping, 24 Fla. 237; Murphy v. Creighton, 45 Iowa 179. (d) The right of action given by statute to an administrator for the death of his decedent by wrongful or negligent act. Morris v. Railroad, 65 Iowa 727; Brown's Adm'r v. Railroad, 97 Ky. 228; Findlay v. Railroad, 106 Mich. 700; Hutchins v. Railroad, 44 Minn. 5. (e) An insurance policy. Ins. Co. v. Woodworth, 111 U. S. 138; Holyoke v. Ins. Co., 84 N. Y. 648; Smith v. Ins. Co., 57 Fed. 133; Ins. Co. v. Smith, 67 Fed. 694. And the ancillary administrator, having the right to the possession of an insurance policy on the life of a non-resident, has a superior cause of action to that of the principal administrator. Merrill v. Ins. Co., 103 Mass. 245.

*Finkelnburg, Nagel & Kirby* for respondent.

(1) Doubtless the allegation that defendant "converted" the property is an allegation of fact, just as is an allegation that defendant has "negligently" done a certain act, but where a wrong is charged in general terms, accompanied by a specific statement of acts constituting such wrong, it is a well-settled rule of pleading that the cause of action is limited to the specific acts enumerated. Waldhier v. Railroad, 71 Mo. 515; Hutson v. Tyler, 140 Mo. 263; Chitty v. Railroad, 148 Mo.

75; Summers v. Ins. Co., 90 Mo. App. 701; Arnold v. Maryville, 110 Mo. App. 260. (2) The stock was assets in New York, where the corporation was organized and the decedent resided, and was not assets in Missouri, where the paper certificate was situated. The result of the authorities may be briefly summarized as follows: As to the situs or corporate stock belonging to a decedent one of the following three propositions is true: 1. The situs is where the corporation is organized. This has the direct support of the following authorities: Winter v. Louden, 99 Ala. 263; Grayson v. Robertson, 122 Ala. 330; Murphy v. Crouse, 135 Cal. 14; Arnold v. Arnold, 62 Ga. 627; Woerner on Administration (2 Ed.), *451; 13 Am. and Eng. Ency. Law (2 Ed.), 924. 2. The situs is the domicile of decedent. This has the support of the following authorities (cited and apparently relied on by appellant): Middlebrook v. Bank, 41 Barb. 481; Hutchins v. Bank, 12 Met. 421; Luce v. Railroad, 63 N. H. 488; Brown v. Railroad, 58 Cal. 426; In re Cape May Co., 51 N. J. L. 78; but to this extent only,—that in the absence of administration in the State where the corporation is organized, a conveyance by the domiciliary administrator will be recognized and given effect. 3. The situs is where the paper certificates happen to be situated at the time of decedent's death. This has the direct support of no authorities. Respondent contends that the first proposition is the true one, and that it is in accord with the principles announced by the court of this State in the cases of Armour v. Bank, 113 Mo. 12; Caffery v. Coal Co., 95 Mo. App. 174; McCarthy v. Hall, 13 Mo. 480; In re Ames' Estate, 50 Mo. 290; Morton v. Hatch, 54 Mo. 411; Becraft v. Lewis, 41 Mo. App. 546. But it makes no difference, so far as this case is concerned, whether the first or second be adopted. In either event, the situs of the stock is in New York, the domicile of both the decedent and the corporation. (3) If anything can be regarded as settled, both in this State and elsewhere,

it is the proposition that the situs of a simple contract debt evidenced by a negotiable instrument, is where the debtor resides, and not where the instrument is found. McCarthy v. Hall, 13 Mo. 480; In re Ames' Estate, 52 Mo. 290; Morton v. Hatch, 54 Mo. 411; Becraft v. Lewis, 41 Mo. App. 546. If this is true, it is difficult to understand how the mere presence of the note in this State could constitute assets, the title to which vested in the ancillary administrator; how a denial of the ancillary administrator's non-existent title could constitute a conversion; how Busch's surrender of the evidence of title to the persons in whom the title was vested, and his refusal to surrender it to the person in whom no title was vested, could constitute a wrong to the latter. Hammond v. Hastings, 134 U. S. 401.

VALLIANT, J. — The petition states that the plaintiff is the public administrator in the city of St. Louis, and that in that right he has taken charge of the estate of John C. De La Vergne, deceased, who at the time of his death was a resident of the State of New York; that De La Vergne in his lifetime, being the owner of 500 shares of stock in a New York corporation called the De La Vergne Refrigerating Machine Company, evidenced by two certificates for 250 shares each, delivered those certificates to the defendant Busch to indemnify him against his liability on a bond for $24,000 which he had signed as surety for the De La Vergne corporation at the request of De La Vergne in an attachment suit in the city of St. Louis against the corporation; that while the attachment suit was pending De La Vergne died in New York and plaintiff in his official capacity as public administrator immediately took charge of the De La Vergne estate in Missouri; that thereafter the attachment suit was dismissed and Busch's liability on the bond ceased; that thereupon the plaintiff demanded of Busch the certificates of stock, but Busch refused to deliver the same

"and wrongfully converted the said certificates and shares of stock to his own use," to the plaintiff's damage in the sum of $50,000, for which sum he asks judgment. The court sustained a demurrer to the petition and the plaintiff declining to plead further, judgment for defendant was entered, and plaintiff appealed.

I.  The first point made in the brief of appellant is that his authority as public administrator to take charge of the estate of the deceased De La Vergne cannot be questioned in a collateral proceeding. That is a correct statement of the law, but that rule of law is not involved in this case. The defendant is not in this case denying the authority of the plaintiff to sue for and recover anything that the deceased De La Vergne left in the way of an estate in Missouri, but he is denying that the stock in the New York corporation of which he holds the certificates was ever in Missouri and therefore he says that it does not belong to the Missouri administrator. It is a question of title to the thing sued for, not the official character of the plaintiff.

II.  It is also said that the petition charges a conversion of the stock and, it is argued, the legal effect of that act was to change the character of the asset from stock in the corporation to a right of action for the tort, and that right of action exists where the wrongdower is found.

It is true the petition charges in general words a conversion of the stock, but in addition to the general charge it specifies how the act of conversion was done, and from the specific averments we find that the only thing the defendant ever had in his possession was the certificate of the stock, and what the plaintiff construes to be conversion consists alone in the refusal of the defendant to deliver to him the certificate when demanded. There is nothing stated in the petition from which the inference can be drawn that the defendant ever made any such use of the certificate as that the

stock itself was lost to the estate. If the averments in the petition relied on to constitute a conversion really have that legal effect, then the conversion would be complete even though the fact were that the defendant had delivered the certificate to the New York administrator and that fact would be no defense to this action.. Unless, therefore, we are prepared to hold that, even though the defendant gave the certificate to the New York administrator (and that fact in the oral argument was admitted), still he was guilty of conversion of the stock, we cannot hold that the demurrer to this petition admits a state of facts on which the defendant would be liable as for conversion.

III. The real question in this case is, was this stock in Missouri when De La Vergne died? The certificate was here and in the hands of the defendant and that is the only fact on which the plaintiff relies to sustain his claim. The corporation was in New York.

To the learning and industry of counsel on both sides of this case we are indebted for an array of all the principal authorities supporting their respective contentions. We will not attempt a review of the authorities discussed, but will be content with citing some of them, referring the inquirer to the briefs themselves, which will be reported, for further light.

To the general proposition that the certificate is not the stock but the mere evidence of the ownership of the stock there is no denial. [Cook on Corporations, sec. 485; Thompson on Corporations, sec. 2348; Armour Bros. v. Bank, 113 Mo. 12; Caffery v. Coal Min. Co., 95 Mo. App. 174; Jellenik v. Huron Copper Co., 177 U. S. 1.]

In Armour Bros. v. Bank, above cited, this court laid down the principle which practically settles the law of this case. In that case the bank held in St. Louis, as custodian for the owner, certificates of stock in a Texas corporation; in a suit by attachment against

the owner a writ of garnishment was served on the bank aimed to attach the stock; the court held that the stock was not attached. The court rested its decision on two propositions: first, that our statute prescribing the mode of serving writs of attachment and garnishment to reach stock in a corporation was intended only to reach stock in a domestic corporation, and no method was prescribed for reaching stock in a foreign corporation; second, that the stock itself was not within the State although the certificate was here. In discussing the second proposition the court, after quoting from some decisions, said: "But be that right what it may, certificates of stock are not the stock itself—they are but evidence of the stock; and the stock itself cannot be attached by a levy of attachment on the certificate. As was well said by the Supreme Court of Pennsylvania, 'Stock cannot be attached by attaching the certificate any more than lands situated in another State can be attached by an attachment in Pennsylvania served on the title deeds to such land.' " [Christmas v. Biddle, 13 Pa. St. 223.] In that case a man in Mississippi had sent to a bank in Philadelphia for sale certificates of stock in a Mississippi corporation; in an attachment suit against the owner an attempt was made to levy on that stock by seizing those certificates and the court held that it could not be done, using the language above quoted.

Our process cannot reach beyond our state boundaries, and, as suggested in the quotation from the Pennsylvania court, if our General Assembly should pass an act essaying to authorize the levy of execution on land in another State by seizing the title deeds that happened to be within our borders, the act would be unavailing. If the real thing that is sought to be taken hold of by the process is not in Missouri it is beyond our reach, and for that reason doubtless our Legislature has never attempted to prescribe a mode for levying an attachment on stock in a foreign corporation.

The court in Armour v. Bank, above mentioned, was, therefore, not content to rest the decision alone on the fact that there was no statute directing a method of attaching stock in a foreign corporation, but it declared the fundamental doctrine that the *res* was not within our borders.

In Jellenik v. Huron Copper Co., 177 U. S. 1, there was the converse of the case before us; that suit was brought in the United States Circuit Court for the Western District of Michigan; the subject-matter of the suit was stock in a Michigan corporation, the owners of the stock and holders of the certificates lived in Massachusetts, and it was contended that since they were not within the Western District of Michigan and were personally beyond the reach of process, the court had no jurisdiction of the case; but it was held that the stock was in Michigan and the court could there lay its hands on the thing in controversy, and having done so it acquired jurisdiction and could bring the owners in by publication. In its opinion the U. S. Supreme Court said (l. c. 13): "The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of the true owner. As the habitation or domicile of the company is and must be in the State that created it, the property represented by its certificates of stock may be deemed to be held by the company within the State whose creature it is, whenever it is sought by suit to determine who is its real owner."

If the property is not here so that it can be reached by the process of a court of general jurisdiction, how can it be taken hold of by a court of limited or special jurisdiction?

In In re Est. Ames, 52 Mo. 290, the administratrix had inventoried the debts due the estate not only in Missouri but in Mississippi also and had, under an order of the probate court of St. Louis county, sold the whole list. It was held that the sale was void in so far

as it attempted to cover the debts outside of Missouri. The court said: "The question here, however, is a question of jurisdiction over such assets after the death of the surviving partner. In such case fiction gives way to truth, and the real *situs* can and must be inquired into." For further authorities on this point we refer to the brief of counsel for respondent.

In our statutes on the subject of the administration of estates of deceased persons there is nothing to indicate a purpose to reach beyond our limits or to authorize an administration founded on fictitious assets.

Section 292 of our laws of administration declares it to be the duty of the public administrator "to take into his charge and custody the estates of all deceased persons: . . . in the following cases: . . . fourth, when money, property, papers or other estate are left in a situation exposed to loss or damage, and no other person administers on the same," etc. The word "papers" used in that clause refers to papers which constitute the assets or a part of the assets of the estate; in other words, papers in which there is a property value. The language is "papers or other estate." It was not the intention of the lawmakers to authorize the public administrator to take charge of anything that was not in the nature of property or assets. If the deased left nothing in this State that could be applied to the payment of debts or to distribution among his next of kin there is nothing here to administer.

It is alleged in the petition that debts to a large amount have been established and allowed against the estate in the probate court here, but that fact is of no influence at all. The public administrator would have as much right to take charge of property or assets here if there were no debts as he would if there were debts, the interests of the distributees are as important as those of the creditors. The plaintiff has added nothing to his case by stating in his petition that debts have been proven against the estate. His right to adminis-

ter depends not on what is to be done with the property at the end of the administration, but on the fact that there was property or assets in this State belonging to the deceased at the time of his death.

A certificate that a certain person owns so many shares of stock in a corporation is but evidence of that fact, it is not the shares of stock. The thing of value is the stock, the thing that De La Vergne in his lifetime owned was the stock, and if that was in New York at the time of his death, it cannot be made the basis of an administration in this State even if our statute essayed to make it so.

If a chattel mortgage is executed on personal property which is in New York the presence of the paper writing in this State does not constructively bring the property within our jurisdiction. In such case if one holds the mortgage here he may thereby acquire an interest in the property, but to realize the interest he must go into the State where the property is.

If a cargo of grain is shipped from St. Louis to New York the bill of lading may be retained here and may be sold for value, but the thing sold is not the bill of lading, but the cargo of grain which it represents and if that should be destroyed the only thing that is of property value is destroyed, though the bill of lading is safe, and if the holder of the bill of lading is entitled to recover of any one for the destruction, it is for the destruction of the grain. But if the bill of lading should be destroyed, the owner loses no property, he is only deprived of the best or most convenient evidence of his title.

The chattel mortgage may be hypothecated and so may the bill of lading, but the delivery of such a collateral is only a symbolical delivery of the property which it calls for, so also it is with a warehouse receipt.

In the case at bar suppose while this certificate of stock was in the hands of the defendant it had been

destroyed by an accidental fire and that that was the condition when the pledgor died, then where was the property? Could a Missouri administrator have acquired any right to administer on the stock which was then in New York? Stock in a corporation is the right of the owner to share in the profits of the operation of the corporation or in the proceeds of its property. That right may exist in one who has subscribed and paid for the stock although no certificate has been issued to him. The *situs* of the interest is the *situs* of the corporation.

The fact that certificates of stock are handled in every-day commerce and treated as the stock itself does not alter the fact that it is merely the representative of the stock and the evidence of ownership.

There may possibly be a value in the certificate itself apart from the value of the stock which it represents, on the same theory that there may be a value in the title papers to other kinds of property apart from the value of the property itself to which they relate. But that value is only estimated in the light of the convenience of such papers as evidence. If a party wrongfully obtains or retains possession of such papers the owner of the property might have his action to recover their possession or damages for their detention, but such damages, if recovered, are no part of the value of the property to which the title papers relate. And no one could maintain such a suit except the owner of the property. Ownership of the title papers is incident only to ownership in the property.

If this were a suit to recover for the loss or destruction of the certificate, that is, the title paper to this stock, brought by the owner of the stock, a different question would arise.

As we understand the theory of the plaintiff's case he is seeking to recover, not the mere value of the paper as evidence, but the value of the stock itself; his position is that the certificate is the stock, but in that he is mistaken; the stock is in New York and belongs to

the administrator there. Right to the possession of the title paper is incident to the ownership of the property.

In the brief for the Missouri administrator in this case it is said that "the contention of the New York administrator if followed to its logical conclusion would lead to strange results," because if, when the Missouri administrator calls on Mr. Busch to deliver to him the certificate, he could lawfully refuse to do so on the ground that it belonged to the New York administrator as an incident to the ownership of the stock, and if, when the New York administrator made a like demand he should again refuse, there would be no way of compelling him to surrender it, because a New York administrator could not maintain a suit in Missouri.

Whether if the defendant had refused to deliver the certificate to the New York administrator the latter could have maintained a suit here to recover the same we are not called upon to say in this case. We frequently hear it said that a foreign administrator, as such, cannot maintain a suit in the courts of this State. That is true as a general rule and is true as applied to the facts of the cases in which that expression is found in our books; but the language used is not entirely accurate and does not express exactly what we mean in the ordinary use of it; what we really mean to say is that an administrator appointed in another State does not, by virtue of his appointment, acquire title to personal property which the intestate left at his death in this State. He cannot maintain a suit here for such property for the simple reason that he has no title to the property, not because the doors of our courts are closed against him, for the doors of our courts are open to every one to sue and recover in this State for anything that belongs to him that is here wrongfully detained by another.

Judge STORY has said: "And here it may be necessary to attend to a distinction important in its na-

ture and consequences. If a foreign administrator has, in virtue of his administration, reduced the personal property of the deceased, there situated, into his own possession, so that he has acquired the legal title thereto according to the laws of that country; if that property should afterwards be found in another country, or be carried away and converted there against his will, he may maintain a suit for it there in his own name and right personally, without taking out new letters of administration; for he is, to all intents and purposes, the legal owner thereof, although he is so in character of trustee for other persons." [Story on Conflict of Laws (8 Ed.), sec. 516.]

A man owns a farm just across our line in Kansas on which he has a herd of cattle, he dies and an administrator is appointed and qualified in Kansas and takes possession of the estate, the legal title to the herd of cattle vests in the Kansas administrator, but some one leaves the gate open and the cattle stray across the line into Missouri and some one here takes possession of them, does the act of the cattle in straying across the line extinguish the title of the Kansas administrator, or are the doors of our courts closed against him if he seeks to recover his own? That question is not in this case, nor is the New York administrator here suing Mr. Busch for the possession of the certificates, so we need not say what we would do if the New York administrator had been compelled to sue here for possession of these certificates.

Our conclusion is that the stock was never in Missouri; therefore, the Missouri administrator never acquired any title to it. The judgment is affirmed. All concur, except *Lamm, J.,* who dissents.