*In re* Miller's Estate.

*In re* the Estate of ALFRED I. MILLER, Deceased (P. T. FOLEY, Petitioner, *Appellee;* The Estate of ALFRED I. MILLER, Deceased, *Appellant*).

No. 18,761.

SYLLABUS BY THE COURT.

1. PROBATE COURT—*Refusal to Appoint Administrator—Appeal.* An appeal may be had from a decision of a probate court refusing to appoint an administrator and grant administration of the estate of a nonresident intestate where the decision is based upon the ground that such intestate left no property in the state to be administered.

2. SITUS—*Capital Stock in Kansas Corporation—At Domicile of Stockholder.* The situs of shares of capital stock in a Kansas corporation owned by one who was a resident of another state at the time of his death, for purposes of administration is at the domicile of the decedent rather than in the state in which the corporation is organized and has its place of business.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed November 8, 1913. Reversed.

*A. A. Osgood, Paul H. Kimball,* both of Parsons, *John E. Bishop,* and *Thomas H. Cobbs,* both of Saint Louis, Mo., for the appellant.

*W. B. Glasse,* and *E. L. Burton,* both of Parsons, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Involved in this appeal is the question whether an administrator can be appointed in Kansas in a case where the deceased owned no property in Kansas, but did own certain shares of stock in a corporation organized under the laws of Kansas and having its general offices in the state, and is there an appeal from a decision by the probate court refusing to appoint an administrator on the application of one of the creditors of the estate. Alfred I. Miller, a resident of St. Louis, Mo., died in 1911 owning stock in a Kansas corporation called the Tishomingo Electric Light and

Power Company, which had its principal place of business in Parsons, Kan. P. T. Foley, who alleged that Miller was indebted to him in the sum of $43,858.40, and that no will had been filed in any other probate court of the state and no administration had been commenced in any other county of the state, applied to the probate court of Labette county for the appointment of an administrator, representing that Miller owned stock in the Kansas corporation named, that an executor of the estate had since been appointed in Missouri, and that the claim of Foley had been filed in the court appointing the executor. The probate court refused to appoint an administrator and dismissed the application, holding that it had no jurisdiction or power to make such an appointment. An appeal from that decision was taken to the district court, where it was held, first, that the decision was appealable, and second, that the probate court had erred in holding that it had no power to appoint an administrator of the estate, and that it was the duty of that court to exercise the power and make the appointment. From that ruling an appeal was taken to this court.

We have, first, the question, Is there an appeal from a decision of the probate court refusing to appoint an administrator? That court is vested with the power and charged with the duty of caring for the estates of deceased persons and of granting letters of administration. In the executors and administrators act it is provided that an appeal may be taken from certain decisions and, also, from "a final decision of any matter arising under the jurisdiction of the probate court, except in cases of *habeas corpus* and injunction." (Gen. Stat. 1909, § 3624.)

Whether there shall be administration of the Miller estate is probate jurisdiction, and the decision holding that administration could not be had and that no administrator of the estate could be appointed in Kansas was a final decision of the whole merits of the applica-

tion.    The case of *Grimes v. Barratt*, 60 Kan. 259, 56 Pac. 472, is cited as an authority against the right of an appeal from such decision.    That case did not determine that there could be no review of a final decision of the probate court refusing administration of an estate, but it did determine that the legislature had vested large discretion in the probate court in the selection of administrators, and that the exercise of that discretion was not the subject of review or appeal.    The statute designates a number of persons who are entitled to administration of an estate in a certain order and from whom the probate court may make a selection.    The competency and suitability of the widow, next of kin or creditors to discharge the trust is left to the discretion of the probate court, and it was held that such discretion was not reviewable unless it was oppressively and arbitrarily exercised.    It was suggested that outside of this discretion a review might be had and that under the then existing statutes a final order of that kind was open to review in a proceeding in error.    Under the new code proceedings in error have been abolished and a review of judgments and of final orders of probate courts may now be had by appeal.    (Civ. Code, §§ 564, 567, 571; *In re Petitt,* 84 Kan. 637, 114 Pac. 1071; *Kroenert v. Sawyer,* 87 Kan. 374, 124 Pac. 418.)

The decision in the present case did not involve a matter of discretion, but it was a final determination of the case and left nothing further for the consideration of the probate court.    As it effectually terminated the litigation of the question in that court, it was a final order or decision, from which an appeal lies.

Was it the duty of the probate court to appoint an administrator on the application of a creditor of the decedent?    Miller was a nonresident of Kansas, and the question is, Did he leave anything here on which to found administration?    It has been held that:

"Where a person dies intestate, who was not a resident or inhabitant of the state at the time of his death, and who left no estate within the state to be adminis-

tered, a probate court of the state has no jurisdiction to issue letters of administration on the estate of such intestate; and where letters are issued, the acts of the court in doing so are utterly null and void." (*Estate of Mallory v. B. & M. R. Rld. Co.*, 53 Kan. 557, syl. ¶ 1, 36 Pac. 1059; *Perry, Adm'r, v. St. J. & W. Rld. Co.*, 29 Kan. 420; *Ewing v. Mallison*, 65 Kan. 484, 70 Pac. 369, 93 Am. St. Rep. 299.)

There was no property in Kansas on which to found administration unless Miller's ownership of shares of stock in a Kansas corporation furnished a basis. Under the common law and as a general rule the situs of personal property is the residence of the owner and the title to personalty is in the domiciliary executor or administrator. This rule may be modified by statute, and it frequently is for taxation and some other purposes. If the general rule applies that the situs of personal property follows the domicile of the owner and there is nothing in the character of the property to except it from the operation of this rule, then it would seem that the probate court was without jurisdiction to make the appointment. The statute in terms provides that "the stock of any corporation created under this act shall be deemed personal estate." (Gen. Stat. 1909, § 1743.)

It is contended, however, that shares of stock are unlike ordinary personalty and that the right under which an owner holds stock is incident to the ownership of the property, and, therefore, that the situs of his right or interest is the situs of the corporation. The answer to this contention is that corporate stock, having been declared by the legislature to be personal estate, it necessarily falls into the classification with ordinary personal property unless the statute expressly gives it a situs elsewhere for purposes of administration. In Cook on Corporations it is said:

"It is a well-established principle of law that shares of stock may, for certain purposes, have a *situs* at two separate places at the same time. For the purposes of suits concerning rights to its title, for taxation, and

for a few other purposes, shares of stock follow the domicile of the stockholder." (2 Cook on Corporations, 7th ed., § 363.)

In *Griffith v. Watson,* 19 Kan. 23, a question arose whether capital stock of a corporation should be taxed at the residence of the owner or in a city in the same county where the corporation was located and engaged in business, and it was held that the stock was taxable at the residence of the owner. This ruling was made upon the theory that stock was personal property and came within the common-law rule that the domicile of the owner draws to it all his personal estate, and besides, this rule was reinforced by the statute which provides that personal property shall be listed and taxed at the place in which the person charged with the tax resides. For purposes of taxation capital stock may have a situs at more than one place at the same time, and it has been held to be competent for the legislature to provide that shares of stock may be separated from their owner and given a situs of their own. (*Tappan v. Merchants' National Bank,* 86 U. S. 490, 22 L. ed. 189.)

In *Covington v. First Nat. Bank,* 198 U. S. 100, 25 Sup. Ct. Rep. 562, 49 L. ed. 963, it was ruled that:

"The situs of shares of foreign-held stock in an incorporated company, in the absence of legislation imposing a duty upon the company to return the stock within the state as the agent of the owner, is at the domicile of the owner." (p. 111.)

In *Luce v. Railroad,* 63 N. H. 588, 3 Atl. 618, it was held that:

"In the absence of ancillary administration or statutory prohibition, the domiciliary administrator appointed in another state has authority to sell and assign stock of the decedent in a corporation in this state, and the corporation may voluntarily consent to its transfer by accepting the outstanding certificate and issuing a new one to the purchaser." (Syl.)

In Ohio it was held that shares of stock in a foreign

corporation had a situs in Ohio for purposes of taxation although the corporation was located in another state and its capital invested in real property in that state. (*Bradley v. Bauder,* 36 Ohio St. 28, 38 Am. Rep. 547.) The same view was taken as to the situs of capital stock for taxation purposes in New Jersey. (*The State v. Branin,* 23 N. J. Law, 484; *Newark City Bank v. The Assessor,* 30 N. J. Law, 13.)

While shares of capital stock give no title to the tangible property of the corporation they do give the owner the right to share in the earnings or profits of the corporation while it is a going concern, and entitle him to receive his proportion of the assets in case they are sold or that the corporation is finally dissolved. Although such shares only represent the interest of the shareholder in the corporation they are generally held to be property, and our statute declares that they shall be treated as personal property. It is the view of the court that, in the absence of legislation fixing the situs of such property for purposes of administration elsewhere, it must be regarded as at the domicile of the stockholder, and hence there was nothing in Kansas upon which to found administration of the estate of Miller, and the probate court of Labette county rightly refused to appoint an administrator. A different view was taken by the supreme court of Missouri in *Richardson v. Busch,* 198 Mo. 174, 95 S. W. 894, 115 Am. St. Rep. 472, where it was in effect held that the situs of shares of stock in a New York corporation was in New York and not in Missouri, where they were held. In answer it is argued that the shares were only temporarily in Missouri; that they really belonged in New York, which was the location of the corporation, and therefore the statements in the decision as to the situs of stock being in the state in which the corporation is organized and doing business must be regarded as *dictum* and not controlling. Another authority cited by appellee is *Grayson, Admr., v.*

*In re* Miller's Estate.

*Robertson, Admx.*, 122 Ala. 330, 25 South. 229, 82 Am. St. Rep. 80, where it was in effect held that, for the purposes of administration, the situs of a certificate of stock of a corporation owned by a decedent is in the state where the corporation was organized and has its principal place of business, since it is the situs of the corporation, and not the domicile of the holder of the certificate, that determines. It is argued, however, that this authority rests to some extent on a local statute, and is therefore not entitled to much weight since it is directly opposed to the general rule which fixes the situs of personal property at the domicile of the owner.

It follows that the judgment of the district court must be reversed.

JOHNSTON, C. J. (dissenting) : In my view the situs of the shares of stock owned by Miller was in Labette county, Kansas, the home and principal place of business of the corporation. While the authorities on the subject are not in harmony it is generally recognized that certificates of stock are not debts, credits, securities or chattels, but are simply evidences that the holder is a member of and has an interest in a corporation which itself owns all of its property. In a sense shares of stock are treated as property, but it is of a peculiar kind which gives the owner no right or title to the tangible property of the corporation. It is such an exceptional property right that it can only be enforced where the corporation is organized and has its place of business, and within the intention of the legislature the situs of the property for administration purposes is at the home of the corporation. In Thompson on Corporations it is said :

"The general rule is that shares of stock in a corporation are personal property, whose location is in the state where the corporation is created. It is true that for purposes of taxation and some other similar purposes stock follows the domicil of its owner; but

considered as property separated from its owner, stock is in existence only in the state of the corporation. On this point the supreme court of the United States has said: 'The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of the true owner. As the habitation or domicil of the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner.' " (4 Thompson on Corporations, 2d ed., § 3471.)

Counsel for appellee quote from and rely upon Cook on Corporations, but while that authority says that for purposes of taxation and a few other purposes shares of stock follow the domicile of the stockholder, this is upon the theory that such property may have a situs at more than one place at the same time, and it then adds:

"On the other hand, it has at the same time a *situs* where the corporation exists, and this *situs* may be for the purposes of suits concerning the title to the stock, for attachment and execution, and for various other similar purposes." (2 Cook on Corporations, 7th ed., § 363.)

In *Grayson, Admr., v. Robertson, Admx.*, 122 Ala. 330, 25 South. 229, 82 Am. St. Rep. 80, this question was directly involved, and it was expressly decided not on a local statute that for purposes of administration the situs of shares of stock of a corporation was in the state where the corporation was created and not at the domicile of the owner. In a still later case the supreme court of Alabama reaffirmed this holding and declared that:

"A certificate of corporate stock is merely evidence of ownership, and the situs of the interest which it represents must for the purposes of administration be in the state in which the corporation is organized and has its place of business." (*Warrior Coal & Coke Co. v. National Bank of Augusta*, [Ala. 1910] 53 South. 997, headnote ¶ 3.)

In *Richardson v. Busch,* 198 Mo. 174, 95 S. W. 894, 115 Am. St. Rep. 472, the subject was discussed at considerable length and cogent reasons are given why the situs of such property is necessarily in the state of the corporation. In *Murphy v. Crouse,* 135 Cal. 14, 66 Pac. 971, 87 Am. St. Rep. 90, it was held that ordinarily choses in action adhere to the person of the owner, but that for purposes of administration this is not true as to certificates of stock. In a question affecting the title to shares of stock the supreme court of the United States decided that the habitation or domicile of the corporation is in the state that creates it, and that the property represented by the certificates of stock is deemed to be within the state and to be held by the corporation for the benefit of the owner. (*Jellenik v. Huron Copper Mining Co.,* 177 U. S. 1, 20 Sup. Ct. Rep. 559, 44 L. ed. 647.) In *Andrews v. Guayaquil and Quito Railway Co.,* 69 N. J. Eq. 211, 60 Atl. 568, it was ruled that the situs of stock in a New Jersey corporation was in New Jersey and that any question relating to it might be determined there. In *Fahrig v. Milwaukee & Chicago Breweries,* 113 Ill. App. 525, it was declared that:

"The general rule is that shares of stock in a corporation are personal property whose location is in the state where the corporation is created." (Syl. ¶ 3; *Matter of Arnold,* 114 N. Y. Supr. Ct., App. Div., 244, 99 N. Y. Supp. 740; *Matter of Fitch,* 160 N. Y. 87, 54 N. E. 701; Note, Ann. Cas. 1912 D, 954.)

In *The State, ex rel., v. Davis,* 88 Kan. 849, 129 Pac. 1197, where the inheritance-tax law was under consideration, it was said that: "Shares of stock are regarded as situated in the state of incorporation." (p. 850.) Being property situated in the state it should not be withdrawn from the state until the claims of resident creditors are satisfied. As said in *Denny v. Faulkner,* 22 Kan. 89: "A state always has the right to protect

*In re* Miller's Estate.

home creditors by administration of the decedent's property within its borders." (p. 95.)

Our statute provides that if a person of another state dies intestate, leaving property in Kansas to be administered, the probate court of the county where the property is situated may grant administration. (Gen. Stat. 1909, § 3436.) In my view the legislature intended that property such as shares of stock situated in Kansas should be administered in Kansas, and that it was never the legislative intention that property of a decedent should be removed from the state until the debts due to its own citizens had been paid. The officers of the corporation are really the agents and representatives of the owners of the shares wherever they may be, and their claims must be presented in Kansas in order to obtain either the profits in the enterprise or a share of the assets in case of final dissolution and distribution. The property being situated in Kansas, the administrator appointed in Missouri did not acquire any title to the shares and has no authority to dispose of them.

I am authorized to state that Mr. Justice MASON and Mr. Justice SMITH concur in this dissent.