THE STATE OF OKLAHOMA, EX REL. S. P. FREELING, ATTORNEY-GENERAL, RESPONDENT, v. NATIONAL CITY BANK OF KANSAS CITY, MISSOURI APPELLANT.

Kansas City Court of Appeals. June 15, 1925.

**1.—Courts—Foreign Laws—Statute of Sister State Held to Have no Effect Beyond Its Own Boundaries.** A statute of a sister state *ex proprio vigore* has no effect beyond its own boundaries.

**2.—Jurisdiction—Receivers—Persons Appointed to Take Charge of Property, Held, in Absence of Statute, Not Entitled to Sue in Sister State.** Appointment by court of persons to take charge of property of another, such as receivers, etc., cannot, in absence of statute, confer authority to sue in a jurisdiction other than that of their appointment, for property situated in a sister State, in which the suit is brought, and to which such officer has never acquired title.

3.—Same—Same—Comity—Receiver Authorized to Sue by Statute, Held, May Sue in Sister State. In absence of objection, excluding extending of comity where power to sue is given receivers, etc., by statute of sister State, such authority will be recognized.

4.—Foreign Laws—Sister State Held Entitled to Sue on Cause of Action Authorized by its Laws. Under section 1162, Revised Statutes 1919, State of Oklahoma, held entitled to sue a Missouri bank to recover for use of depositors' guaranty fund, money due Oklahoma bank.

5.—Same—Comity—Question of Comity in Transitory Cause of Action Held Not Material. Since passage of sections 1162, 1163 and 1164, Revised Statutes 1919, question of comity in a transitory cause of action by another State against local corporation to recover money due insolvent bank of such other State, is not material, and under sections 1164 and 1165, Revised Statutes 1919, existence of resident creditors of insolvent bank would not prevent maintenance of action.

6.—Banks and Banking—Under Laws of Oklahoma Administration of Depositors' Guaranty Fund Not Being Subject to Judicial Control, Missouri Court Was Without Power to Review Decision of Banking Board with Reference Thereto. In a suit by State of Oklahoma, to recover for use of its depositors' guaranty fund, against a Missouri bank indebted to insolvent Oklahoma bank, and since under laws of Oklahoma administration of depositors' guaranty fund is not subject to judicial control, Missouri court would have no power to review decision of banking board in paying out money from that fund.

7.—Evidence—All Official Acts of Bank Commissioner Presumed to Have Been Rightfully and Legally Done. In an action by State of Oklahoma to recover for use of depositors' guaranty fund against Missouri bank, Oklahoma bank commissioner presumed to have authority to sell assets of insolvent bank to new bank, which made payments to depositors of old bank, and the burden was upon defendant bank to show lack of authority in making transfer of assets.

8.—Banks and Banking—Oklahoma Bank Commissioner in Appointing Agent to Pay Depositors of Insolvent Bank, Held Not to Have Delegated Authority. Where bank was insolvent, sale by Oklahoma bank commissioner of its assets to another bank, with provision that latter pay depositors of former, held not a delegation of authority, but merely the appointment of an agent for the State.

9.—Same—Receipt and Retention of Letter Containing Check, by Postmaster Who Was Director of Bank, Pursuant to Request of President Thereof, Held Not Receipt Thereof by Bank. Where letter directed to bank contained personal check drawn by president thereof, the receipt and retention thereof by postmaster, who was director of bank, pursuant to direction of president, held not equivalent to reception of letter and check by bank, in absence of collusion, particularly where it was custom of postmaster to comply with similar requests.

10.—Appeal and Error—Where Alleged Errors are Not Specifically Pointed Out, They Will be Treated as Abandoned. Errors in admission of incompetent and irrelevant testimony and in refusing to admit competent and material evidence offered, where not specifically pointed out or elaborated upon, will be treated as abandoned.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 1370, n. 32; 4CJ, p. 1068, n. 16. Banks and Banking, 7CJ, p. 484, n. 77 New; p. 560, n. 91, 92; p. 743, n. 74 New. Conflict of Laws, 12CJ, p. 434, n. 15. Courts, 15CJ, p. 778, n. 52. Evidence, 22CJ, p. 133, n. 31; p. 137, n. 81. Receivers, 34Cyc, p. 484, n. 50; p. 488, n. 57. States, 36Cyc, p. 907, n. 96.

Appeal from the Circuit Court of Jackson County.—Hon. Samuel A. Dew, Judge.

AFFIRMED.

*Johnson & Lucas, Halbert H. McCluer,* and *Omar E. Robinson* for appellant.

*McCune, Caldwell & Downing* and *George F. Short* for respondent.

BLAND, J.—This is a suit brought by the State of Oklahoma at the relation of its Attorney-General to recover for the use of the depositors' guaranty fund of said State the sum of $5000 with interest. The case was tried by the court without the aid of a jury, resulting in a judgment in favor of plaintiff in the sum of $6000 and defendant has appealed.

The facts show that the Mineral Belt Bank, a State bank located at Tar River (now Cardin), Oklahoma, with a captal of $15,000 carried on account with the defendant; that Truman Elmore, President of the Mineral Belt Bank, about July 14, 1918, asked the postmaster at Tar River, who was also a director of that bank, to hold all mail coming from the banks whose names appeared on a slip of paper that he handed to the postmaster. The names of four banks appeared on the paper, one of which was the name of the defendant. A similar slip of paper was handed to the assistant postmaster by Elmore. The postmaster agreed to comply with the request. Elomre left Tar River that day. On July 16, 1918, Elmore appeared at defendant's bank at Kansas City and procured the cashier thereof to cash his check in the sum of $5000. On the same day defendant mailed this check to the Mineral Belt Bank at Tar River and the envelope had upon it the information that it was to be returned if not called for in five days. The letter arrived at Tar River on the afternoon of July 17 or the morning of July 18. The postmaster did not put this letter in the bank's box but acting under Elmore's direction placed it in a pigeon hole in his office where it remained. Elmore did not have sufficient funds in the Mineral Belt Bank to meet the check.

On July 22, 1918, Elmore committed suicide in a hotel in Kansas City. On July 23, after learning of Elmore's death, and having received no communication from the Mineral Belt Bank, defendant charged said sum of $5000 against the account of said bank. On July 27, 1918, the Mineral Belt Bank was declared insolvent by the State Bank Commission of Oklahoma who thereupon took charge of its affairs. About this time, probably the same day, the letter containing the Elmore check was delivered to the agent of the Bank Commissioner by the postmaster. The check was not paid but was protested. The Bank Commissioner found the bank insolvent and proceeded to wind up its affairs and in doing so large sums of money were advanced out of the depositors' guaranty fund of the State of

Oklahoma to pay the depositors. Most of the assets were sold to the Cardin State Bank and claims of the depositors were liquidated through that bank. The sum sued for herein is for money due from the defendant to the Mineral Belt Bank upon the deposit of the Mineral Belt Bank with defendant.

Defendant's first point is that the petition fails to state a cause of action, and that the court erred in refusing to sustain its demurrer offered at the close of all the evidence. The petition pleads certain laws of the State of Oklahoma contained in the Revised Statutes of Oklahoma of the year 1910; that section 264 of said revised statutes provided that upon the violation of the banking laws of the State of Oklahoma by any officer or director of any State bank, the Bank Commissioner was authorized to close and liquidate the bank and annul its charter; that section 276 provided that any bank posting a notice on its front door that "This bank is in the hands of the State Bank Commissioner" would be sufficient to place all the assets of the bank in the possession of said commissioner and should operate as a bar to any attachment proceedings; that section 278 provided when a bank should be deemed insolvent; that section 302 provided that when any State bank became insolvent or whenever its rights or franchise had been adjudged to be forfeited, and whenever the Bank Commissioner should become satisfied of the insolvency of the bank, he might, after examination of its affairs, take possession of its assets and wind up its affairs; that section 303 provided that where the Bank Commissioner took possession of a State bank, the depositors thereof should be paid in full; that where the cash available or that that could be made immediately available, is insufficient to discharge the obligations to the depositors, he should draw from the depositors' guaranty fund an amount necessary to make up the deficiency "and the State shall have for the benefit of the depositors' guaranty fund a first lien upon the assets of said bank or trust company, and all liabilities" against certain persons "and against all other persons, corporations or firms and that such liability might be enforced by the State for the benefit of the depositors' guaranty fund;" that section 304 provided that the Bank Commissioner should take possession of the books, records and assets of every description of such a bank, collect debts due from claims belonging to it and might upon order of the district court or judge thereof sell the real and personal property of such insolvent bank and might if necessary pay the debts of such bank.

The petition further pleaded that section 1 of chapter 22 of the Session Laws of the State of Oklahoma, 1913, provided that the banking board should be composed of the Bank Commissioner and three other persons to be appointed by the Governor, which should have supervision and control of the depositors' guaranty fund and

should have power to adopt all necessary rules and regulations not inconsistent with law for the management and administration of said fund; that section 6 of chapter 22 of the Session Laws of the State of Oklahoma, 1913, provided for annual assessments to be made against each bank organized under the laws of the State of Oklahoma for the purpose of creating a depositors' guaranty fund, which should be used solely for the purpose of liquidating the deposits of failed banks and retire warrants provided for in the act. The petition then pleaded the insolvency of the Mineral Belt Bank and the taking of possession thereof by the Bank Commissioner for the purpose of winding up its affairs and collecting its debts, and that the cash available in said bank, the proceeds of sale of certain assets of the bank and the collection of the notes and other obligations due it, were and are insufficient to discharge the obligation to the unsecured depositors of said bank so that the plaintiff, through its Bank Commissioner and banking board, was compelled to and did pay such depositors and to the Cardin State Bank, for the use and benefit of said depositors, the sum of $34,560.16 out of the depositors' guaranty fund, in addition to and after using all the cash and the cash available from the sale of certain assets of the bank; that by reason of the operation of the laws of the State of Oklahoma as therein pleaded, the State had "title to and is vested with a first prior and superior lien upon all the assets of said bank for the use and benefit of the depositors' guaranty fund of the State of Oklahoma."

The petition further alleged that among the assets of said bank that was adjudged insolvent by the Bank Commissioner was a balance on account and a deposit of money and credit in the sum of $5000 in and with the defendant, which deposit under the laws of the State of Oklahoma then and there became the property of the plaintiff herein for the use and benefit of the depositors' guaranty fund; that demand had been made on defendant for said sum of money but that defendant had refused to pay the same and plaintiff prayed judgment against it for said sum with interest and costs. The answer pleaded a defense based upon the acts of Elmore and the postmaster of Tar River in their official relation with the Mineral Belt Bank in respect to said check, the withholding of it at the time and circumstances under which it was presented, and protest for non-payment; and certain statutory provisions of the State of Oklahoma as to presentments and protest of commercial paper, charging that under the facts and said provisions, the Mineral Belt Bank had accepted the check. There is no controversy as to the existence of the various provisions of the Statutes of Oklahoma pleaded by the parties.

In connection with the point now made, defendant insists that "a lien created by the statute of one State is not operative on property outside of the limit of the state passing the statute. No State law is

valid as against persons or property when beyond the boundaries of the State.'' Defendant misconceives the effect of section 303, and the other provisions of the laws of Oklahoma. Plaintiff is not claiming that it has any right or title to any specific fund or money. It is held that in taking possession of the assets of an insolvent bank by the Bank Commissioner of Oklahoma, the absolute title to the assets of an insolvent bank vests completely in the State for the benefit of the depositors' guaranty fund and is as much a fund of the State as the common school fund or any other fund of which the State is administering. [State ex rel. v. Cockrell, 27 Okla. 630, 632, 633; State ex rel. v. Smith, 77 Okla. 277; Lankford v. Platte Iron Works, 235 U. S. 461, 473.] The effect of the statute is to vest the title to the assets of the failed bank in the State for the benefit of the depositors' guaranty fund and to make the State a preferred creditor until any deficiency in the guaranty fund created by the payment therefrom of the depositors of the insolvent bank, is made up. [Lankford v. Printing Co., 35 Okla. 404.] The title of the State to the assets and money of the failed bank undoubtedly is such that it can bring any action that the bank could have brought in regard to the assets. The lien created by the statute upon the assets of the bank is merely for the purpose of permitting the State to reimburse itself as a preferred creditor for the money it has advanced in paying the depositors, and only comes into play at the distribution of the proceeds realized from the assets. It does not affect the title of the State to the assets and its right to bring an action such as the one involved in the case at bar, for in that respect the State occupies the position of the bank.

It is true that the statute of a sister State, *ex proprio vigore* has no effect beyond its own boundaries and one merely appointed by the court of another State to take charge of property of another, such as receivers, executors and administrators, cannot, in the absence of statute, sue in a jurisdiction other than that of their appointment for property situated in the sister State in which the suit is brought and to which such officer has never acquired title. [Richardson v. Busch, 198 Mo. 174; Crohn v. Bank, 137 Mo. App. 712; Hartnett v. Langan, 222 S. W. 403, 409; Hill v. Barton, 188 S. W. 1105.] This rule applies only where the powers of such an officer is derived solely from the appointment by the court of another jurisdiction and not, in the absence of some objection which excludes the extending of comity, when the property is taken without the interposition of a court, such as in an assignment for the benefit of creditors, or where, under such circumstances, power to sue is given by statute of the sister State. [23 R. C. L., p. 141; Howarth v. Angle, 162 N. Y. 179; Howarth v. Lombard, 175 Mass. 570; Duke v. Jenks, 291 Fed. 282; Relfe v. Rundle, 103 U. S. 222; Bullock v. Oliver, 155 Ga. 151; Bernheimer v. Converse, 206 U. S. 516; Carmichael v.

Banking Co., 191 S. W. 1043; Glenn v. Hunt, 120 Mo. 330; Askew v. La Cynge Bank, 83 Mo. 366.] However, all of this is now besides the question in this State for the reason that there is no doubt of the right of plaintiff to bring this suit since the enactment of section 1162, Revised Statutes, 1919, which reads as follows:

"Whenever a cause of action has accrued under or by virtue of the laws of any other State or territory, such cause of action may be brought in any of the courts of this State, by the person or persons entitled to the proceeds of such cause of action: Provided, such person or persons shall be authorized to bring such action by the laws of the State or territory where the cause of action accrued."

It is insisted by defendant that the only ground upon which plaintiff can be permitted to bring this suit in this State is that of comity and comity is never exercised unless it appears that no local creditor of the State would be injured; that the payment to plaintiff would not protect defendant if it should be found that the Mineral Belt Bank owed a creditor in Missouri, and that comity should not be extended for the reason that the banking laws of the State of Oklahoma in making the State a preferred creditor for the benefit of the depositors of the failed bank, is in conflict with the laws of Missouri and against its public policy of placing all creditors on a parity. There is nothing in these contentions even if it had been shown that the Mineral Belt Bank had a creditor in Missouri, which was not. Since the passage of sections 1162, 1163 and 1164, Revised Statutes 1919, the question of comity, within the broad meaning of the word, and in a transitory cause of action of this kind, is no longer material in this State. [State ex rel. v. Grimm, 239 Mo. 135, 150, 178-186.] This State in this suit is not concerned with the distribution of the proceeds of the causes of action. [Sections 1164 and 1165, R. S. 1919.]

It is insisted that the finding of the Bank Commissioner, if any such finding was made by that officer, that the persons whose names appeared upon the books of the defunct bank as creditors, were entitled to the respective sums of money there shown, has no extra-territorial effect; "that it was incumbent upon the Bank Commissioner to make proof here that the money paid by the Bank Commissioner or by the Cardin State Bank was paid to bona-fide depositors of the defunct bank. The record is silent upon this proposition."

In winding up the affairs of the bank, in order to procure the payment to the depositors, the Bank Commissioner entered into a contract with the Cardin State Bank on July 27, 1918, wherein nearly all the assets of the Mineral Belt Bank were sold to the Cardin State Bank, but such sale did not include this cause of action. The contract between the commissioner and the Cardin State Bank recited

that that bank agreed to pay the certificates of deposit and the cashier's checks to the general depositors of the Mineral Belt Bank, and further recited that certain balances due the Mineral Belt Bank from the defendant were short in the sum of $19,040, "such shortage occurred by reason of certain fictitious remittances in the sum of $14,040, which remittances were never sent by the Mineral Bank" to the defendant and a—

". . . further shortage in the sum of $5000 which occurred by reason Truman Elmore, President of the Mineral Belt Bank, drawing a personal check for such sum payable to his own account and which was by the National City Bank of Kansas City, Mo., charged to the account of the Mineral Belt Bank of Tar River, Okla.; and a further shortage in the sum of $5000 in the account of the Mineral Belt Bank with the First Nat'l Bank of Miami, Oklahoma, which shortage occurred by reason of the delivery of said sum of money by the First National Bank of Miami, Oklahoma; to Truman Elmore, President of the Mineral Belt Bank of Tar River and which sum om money was never received by the Mineral Belt Bank of Tar River, and that by reason thereof there exists a shortage in the resources of the Mineral Belt Bank in the aggregate sum of $24,040 which said sum of $34,040 party of the first part (the Bank Commissioner) hereby agrees to pay to party of the second part."

In connection with the point now made, the facts show that by formal certificates, dated July 27, 1918, the State Bank Commissioner of Oklahoma declared the Mineral Belt Bank to be insolvent. The original ledger relating to the depositors' guaranty fund was introduced in evidence and showed that $34,560.16 was actually paid out of that fund on account of the insolvency of the Mineral Belt Bank. An itemized list of the depositors was attached to the contract between the Commissioner and the Cardin State Bank, showing deposits aggregating $94,738.81. All of these deposits were paid by the Cardin State Bank pursuant to this agreement. Of the $34,560.16 paid out of the guaranty fund on account of the insolvency of the Mineral Belt Bank, the sums of $24,040 and $7167.22 were paid to the Cardin State Bank. The warrant for the first of these sums recited that it was paid out in liquidating the Mineral Belt Bank and for the latter on account of "forged notes and discrepancies." The testimony being that this latter sum was to take up some paper that was sold to the Cardin State Bank by the Bank Commissioner which proved to be forged and worthless. The first warrant for $24,040 was for the purpose of covering the shortage referred to in the contract between the Bank Commissioner and the Cardin State Bank. It would, therefore, appear that at least $24,040 of the $34,560.16 was paid out of the guaranty fund on account of the insolvency of the Mineral State Bank and for the purpose of paying the depositors

220 Mo. App.—31.

of that bank. The evidence shows that the assets of the Mineral Belt Bank available for the purposes of paying depositors is short in this amount at least.

However, regardless of this testimony, we do not think there is any merit in defendant's contention. Under the laws of Oklahoma in taking over an insolvent bank, the Bank Commissioner "acts as an arm or instrumentality of the State in the exercise of its police powers to effect the purpose of the law for the protection of depositors. [United States v. State of Oklahoma, 43 Sup. Ct. Rep., 295, 299.] In the case of Lovett v. Lankford, 47 Okla. 12, 23, it was stated—

"Defendants in error (the banking board) constitute a part of the executive department of the State. They are required to pass upon the validity of the claim in question, and as to whether it was protected by section 303, supra, and was entitled to be paid out of the depositors' guaranty fund. They did not fail to pass upon the question presented to them; but they did decide, and construed the law adversely to the contention of plaintiffs, holding that such claim was not protected by he depositors' guaranty fund. It was their duty to construe the law and apply it to the facts before them. They evidently followed the construction and application of the statute by this court in the case of Columbia Bank & Trust Co. v. U. S. Fidelity & Guaranty Co., supra. Their decision in this regard is upheld by us in this opinion. From the foregoing, it is clear that defendants constitute a part of the executive department of the State Government, and that they were vested with the exercise of discretion and judgment in the premises; and their action cannot be reviewed or reversed in a proceeding for writ of mandamus."

Under the laws of Oklahoma the decision as to who were the depositors of the defunct bank and who were entitled to the money paid out of the depositors' guaranty fund, is vested in the banking board and the Bank Commissioner. Defendant, in effect, admits that this is true but says that their decision has no extra territorial effect and cites in support of this case the case of Bank v. Dowdy, 175 Mo. App. 478. That case is clearly not in point, it merely holds that a judgment against a foreign ancillary administrator furnishes no cause of action against a domiciliary executor or administrator. There is, therefore, no authority cited in support of the contention that the acts of the banking board and Bank Commissioners of the State of Oklahoma are not binding upon the courts of this State in this proceeding and there cannot be any good reason suggested in support of such a contention. Under the laws of Oklahoma the administration of the depositors' guaranty fund is not subject to judicial control (Lovett v. Lankford, supra; Lankford v. Iron Works, supra, l. c. 475), and we would have no power to review the decision of the banking board in paying out money from that fund. The au-

thority of the banking board and Bank Commissioner to determine who were entitled to be paid out of the guaranty fund is an incident to the cause of action created by the laws of Oklahoma, which cause of action, as already stated, can be enforced in this State.

It is insisted that there is no evidence to show that the Bank Commissioner obtained an order of the District Court or judge thereof before selling the assets of the Mineral Belt Bank to the Cardin State Bank and consequently there was no legal conveyance of the assets of the former to the latter; that the Cardin State Bank paid out the alleged disbursements of the assets to the depositors of the Mineral Belt Bank without lawful authority, and it had, therefore, no valid claim against the banking department for reimbursements; and "no court can presume that officials of a foreign State obtained an order of court affecting the property rights in a foreign state;" that the Cardin State Bank had no right to act as agent of the Bank Commissioner in winding up the affairs of the Mineral Belt Bank, the Oklahoma statutes not authorizing the Bank Commissioner to delegate his authority.

We do not think that the action of the banking board in paying the depositors of the Mineral Belt Bank can be inquired into by the courts, for the reasons already given. Aside from this, this is not a contest between the two banks as to the title to the assets conveyed but is in the nature of a collateral attack on the conveyance of the assets. The Mineral Belt Bank is not complaining and the maxim that "all official acts are persumed to have been rightfully and legally done" undoubtedly is applicable in the case at bar and the burden was upon the defendant to show lack of authority in making the transfer of assets. [Williamson, etc., Co. v. State, 68 Okla. 40; Kries v. Land & Lumber Co., 121 Mo. App. 184; Chilton v. Metcalf, 234 Mo. 27.] The Bank Commissioner delegated no authority. He merely made the Cardin State Bank the agent of the State in paying the depositors of the defendant bank.

It is insisted that the conduct of Elmore and the postmaster was such that when the latter "took and withdrew the letter containing the check in controversy from the other mail of the bank by direction of his superior officer, it was equivalent to a reception of the letter and check by the bank." In this connection it is insisted that the Mineral Belt Bank was a one-man bank, Elmore being the only person actively conducting the business of the bank. There is some evidence to this effect but others that Elmore attended exclusively to the mail of the bank but that the general business was conducted by himself and the cashier. The postmaster, who was also a director of the bank, testified that when the request was made by Elmore to hold certain mail directed to the bank, he did not suspect that the request was made from any improper motive, that persons receiving mail at

the post office frequently made similar requests; that he did not hold the mail as a director of the bank but as postmaster. There was no collusion shown between the postmaster and Elmore. It will be remembered that Elmore gave a similar slip of paper to the assistant postmaster; there is, therefore, an inference that the same request was made of her. The evidence shows that Elmore did not have sufficient funds in the bank to meet the check he drew, which was cashed by the defendant. There is an inference from the testimony that when he made the request of the postmaster he was planning to do the very thing that he did, namely, to draw a check against his own bank account largely in excess of his balance and have that check held in the post office until he could return and make some arrangement in regard to it. The bank was not interested in having its mail, or in having Elmore's check, held up. He alone was interested in that. This matter was at least for the court sitting as a jury. [Rhodes v. Webb, 24 Minn. 282, 294; 7 C. J., sec. 166, p. 559; Farmers' Bank v. Ozias, 209 S. W. 580; Central Bank v. Thayer, 184 Mo. 61.]

Complaint is made that the court erred in admitting incompetent and irrelevant testimony offered by plaintiff over the objections of the defendant, and in refusing to admit competent and material evidence offered by defendant. The erors in reference to these matters, if any, are not specifically pointed out or elaborated upon, therefore, they will be treated as abandoned. [State v. Whitsett, 232 Mo. 511,]

The judgment is affirmed. *Arnold, J.*, concurs; *Trimble, P. J.* absent.