In the Matter of the Appraisal of the Property of EMILY M. FITCH, Deceased, under the Act in Relation to Taxable Transfers of Property.

JOHN B. FITCH, as Executor of EMILY M. FITCH, Deceased, Appellant; The COMPTROLLER OF THE CITY OF NEW YORK, Respondent.

1. TAXABLE TRANSFER ACT — JURISDICTION OF SURROGATE'S COURT. *It seems*, that the Taxable Transfer Act (Laws 1892, ch. 399) and the sections of the Code of Civil Procedure providing for the granting of letters upon a decedent's estate should be read together as if constituting one enactment; and that what is held to be property, within the meaning of that portion of the statute which provides that a tax shall be imposed upon its transfer, is also property for the purpose of conferring upon the Surrogate's Court jurisdiction to impose the tax.

2. JURISDICTION OF SURROGATE'S COURT OVER TAXATION OF TRANSFER OF STOCK OF DOMESTIC CORPORATION HELD BY NON-RESIDENT DECEDENT. Shares of stock in a corporation of this state, held by and transferred under the will of a non-resident who died without the state, and taxable under the Taxable Transfer Act as "property within the state," are, within the meaning of subdivision 3 of section 2476 of the Code of Civil Procedure, "property within that county" where the corporate property is, and hence the Surrogate's Court of that county has, by force of section 10 of the Transfer Act, jurisdiction to impose the tax.

*Matter of Fitch*, 39 App. Div. 609, affirmed.

(Argued June 6, 1899; decided October 3, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 3, 1899, affirming an order of the Surrogate's Court of the. county of New York, denying a motion to dismiss proceedings instituted for the appraisal of property under the Transfer Tax Act.

The facts, so far as material, are stated in the opinion.

*John A. Garver* for appellant. The Surrogate's Court had no power to assess the tax in the present case. (*Matter of Bronson*, 150 N. Y. 1; *Riggs* v. *Cragg*, 89 N. Y. 489; *Matter of Hawley*, 104 N. Y. 262; *Matter of Underhill*,

117 N. Y. 471; *Garlock* v. *Vandevort*, 128 N. Y. 374; *Gilbert* v. *York*, 111 N. Y. 544; *Matter of Stewart*, 131 N. Y. 274; *Matter of Embury*, 19 App. Div. 214; L. 1892, ch. 399, § 10; Code Civ. Pro. § 2476; *Evans* v. *Schoonmaker*, 2 Den. 249.) No letters of any kind could ever have been issued by the New York surrogate on this estate. (Code Civ. Pro. § 2694; *Matter of Embury*, 19 App. Div. 214; *Parsons* v. *Lyman*, 20 N. Y. 103; *Ennis* v. *Smith*, 14 How. [U. S.] 400.) The Connecticut court had exclusive jurisdiction. (*Devlin* v. *Roussel*, 36 App. Div. 87; *Bogardus* v. *Clark*, 4 Paige, 623; *Loring* v. *Steinman*, 1 Met. 201; *Exton* v. *Zule*, 14 N. J. Eq. 501; *Blythe's Estate*, 112 Cal. 689; *Liginger* v. *Field*, 78 Wis. 367; *Ennis* v. *Smith*, 14 How. [U. S.] 400; *Brigham* v. *Fayerweather*, 140 Mass. 411; *Vanderpoel* v. *Van Valkenburgh*, 6 N. Y. 190; *Hoyt* v. *Hoyt*, 112 N. Y. 493.) The statute must be strictly construed. (Dwarris on Statutes, 743; Cooley on Taxation [2d ed.], 275; *Doe* v. *Snaith*, 8 Bing. 147; *Green* v. *Holway*, 101 Mass. 243; *Cahoon* v. *Coe*, 57 N. H. 557; *Alton* v. *Æ. Ins. Co.*, 82 Ill. 45; *Smith* v. *Waters*, 25 Ind. 397; *Bowling Green* v. *Warren Co.*, 10 Bush [Ky.], 711; *Mankato* v. *Fowler*, 32 Minn. 364; *State* v. *Brower*, 64 Ala. 287; *Savannah* v. *Hartridge*, 8 Ga. 23; *Moseley* v. *Tift*, 4 Fla. 402.)

*Emmet R. Olcott* for respondent. That the gas stock owned by the decedent was property within the state, and lawfully subject to taxation, is beyond question. (1 R. S. 387, § 1; 388, § 3; 1 Cook on Stocks, etc. [3d ed.], 21, 22; *Tappan* v. *M. Nat. Bank*, 19 Wall. 890; *Farrington* v. *Tennessee*, 95 U. S. 679; *Matter of Bronson*, 150 N. Y. 1; *A. C. Co.* v. *County Comrs.*, 59 Md. 185; *Baltimore* v. *C. P. R. R. Co.*, 57 Md. 41; *State* v. *Jersey City*, 45 N. J. 480; *L. I. Co.* v. *Luzerne Co.*, 42 Penn. St. 424; *Whitsell* v. *Northampton Co.*, 49 Penn. St. 526; *Tremont Bank* v. *Boston*, 1 Cush. 142; *State* v. *Petway*, 2 Jones Eq. 396.) The certificates of the gas stock kept by the decedent at her domicile were not the property. (*Jermain* v. *L. S. & M. S.*

*R. Co.*, 91 N. Y. 481 ; *Matter of Bronson*, 150 N. Y. 21 ;
*Wheeler* v. *Millar*, 90 N. Y. 353 ; *Burr* v. *Wilcox*, 22 N. Y.
551 ; *Thorp* v. *Woodhull*, 1 Sandf. Ch. 411 ; *F. N. Bank* v.
*Gifford*, 47 Iowa, 575 ; *National Bank* v. *Watsontown Bank*,
105 U. S. 217 ; *Ellis* v. *Proprietors of Essex Merrimack
Bridge*, 2 Pick. 243 ; *Beckett* v. *Houston*, 32 Ind. 393 ;
*Agricultural Bank* v. *Wilson*, 24 Me. 273.) That the
surrogate of the county of New York had jurisdiction of this
proceeding is clearly evident. (*Matter of Swift*, 137 N. Y.
77 ; *Matter of Merriam*, 141 N. Y. 484 ; Code Civ. Pro.
§§ 2476, 2694 ; *Callahan* v. *Woodbridge*, 51 N. E. Rep. 176 ;
*Russell* v. *Hartt*, 87 N. Y. 19 ; *Weber* v. *Fickey*, 47 Md.
196 ; *Matter of Miller*, 5 Dem. 381 ; *Matter of Bronson*,
150 N. Y. 3 ; *Matter of Hubbard*, 21 Misc. Rep. 566 ; *Mat-
ter of Embury*, 19 App. Div. 214.) The specious plea that
because no letters ancillary were applied for on behalf of the
estate, and the property was transferred without letters ancil-
lary, is merely an evasion and does not change the fact that
the property was taxable and the tax due. (L. 1892, ch. 399,
§§ 3, 10 ; Code Civ. Pro. § 2476, subd. 3.)

PARKER, Ch. J.   The question presented is not whether the
property is taxable under the Taxable Transfer Act, under
which the surrogate has, in proceedings taken for that pur-
pose, made an order imposing a tax, but whether the Surro-
gate's Court had jurisdiction to make the order.

The facts out of which the question grows may be briefly
stated as follows : Mrs. Emily M. Fitch, a resident of Con-
necticut, died in that state in July, 1894, leaving a last will
and testament, wherein John B. Fitch was named executor.
In due course the will was probated in the county of her resi-
dence, and before October, 1895, the estate having been duly
administered, the executor rendered an account of his pro-
ceedings, which was approved by the Probate Court of New
Haven, and a final distribution of all of the property in accord-
ance with the terms of the will was made, with the possible
exception of some funds which the executor took over as

trustee under the will. During the course of administration the executor paid to the state of Connecticut the sum of $4,451.79, that being the amount of collateral inheritance tax imposed by the laws of that state. In April, 1897, a year and a half thereafter, the comptroller of the city of New York instituted a proceeding in the Surrogate's Court of that county for the appointment of an appraiser to fix and determine for the purposes of taxation, under the Taxable Transfer Act of the state of New York, the value of the personal property of the said Emily M. Fitch which was situated in the state of New York at the time of her death, and which the petitioner asserted was either passed or transferred by the terms of the will. The property consisted of 348 shares of the capital stock of the Consolidated Gas Company of New York. It was decided in *Matter of Bronson* (150 N. Y. 1) that shares of stock in corporations incorporated under the laws of this state, represented by certificates in the possession of a non-resident decedent at the time of his death at his domicile out of the state, and which have through his will passed to non-residents, are, nevertheless, subject to taxation under the Transfer Act of 1892. The facts in that case and in this one are substantially alike, and the decision in *Bronson's* case is broad enough in its effect to cover the question presented here, but the appellant contends, and correctly, that in that case counsel did not challenge the jurisdiction of the Surrogate's Court which imposed the tax, and, therefore, the question was not considered by the court. After the decision in *Bronson's* case this court had before it *Matter of Embury* (154 N. Y. 746), where it was held by an affirmance on the opinion below (19 App. Div. 214), that while the statute declared such of Embury's property to be taxable as was situated in the city of New York, nevertheless as it omitted to authorize the surrogate to impose the tax, the order made by that officer was without jurisdiction. The statute then under consideration, so far as concerns the question of jurisdiction and the general situation as well, presented a very different question from that before us on this review, so that

the case is only in point to the extent that it holds that unless authority is conferred upon the surrogate to impose the tax, an order to that effect is without jurisdiction and void. The legislature might have provided that where a non-resident dies owning stock in a New York corporation, the surrogate of the county where the company has its principal place of business shall have power to impose the tax upon the decedent's interest in the corporation, but it did not do so, and the appellant insists that the facts appearing in the petition in this record do not bring the matter within the jurisdiction of the Surrogate's Court under any reasonable construction of the statute. So much of the statute as is material in a discussion of the question reads as follows: "The Surrogate's Court of every county of the state having jurisdiction to grant letters testamentary or of administration upon the estate of a decedent whose property is chargeable with any tax under this act, or to appoint a trustee of such estate or any part thereof, or to give ancillary letters thereon, shall have jurisdiction to hear and determine all questions arising under the provisions of this act, and to do any act in relation thereto authorized by law to be done by a surrogate in other matters or proceedings coming within his jurisdiction." (Laws 1892, chap. 399, § 10.)

Neither letters testamentary nor ancillary letters were applied for or issued in this case, but that fact has no bearing whatever on the question involved, for the jurisdiction of the court is to be determined by the answer to the question: Had the court power to issue letters? If it had, then under the statute as it has been construed in the *Embury* and other cases, the court had jurisdiction to impose the tax; if it had not such power, then the appellant's objection that the surrogate was without jurisdiction is well taken.

Section 2476 of the Code provides as follows: "The Surrogate's Court of each county has jurisdiction, exclusive of every other Surrogate's Court, to take the proof of a will, and to grant letters testamentary thereon, or to grant letters of administration, as the case requires, in either of the following

cases: *  *  *  3. Where the decedent, not being a resi-
dent of the state, died without the state, leaving personal
property within that county, and no other; or leaving per-
sonal property which has, since his death, come into that
county, and no other, and remains unadministered." Under
the third subdivision the Surrogate's Court seldom takes juris-
diction, and never does it do so unless the best interests of the
estate and that of the parties interested therein will be sub-
served by its exercise of the jurisdiction which the statute
plainly attempts to confer, and when it does it follows the
rule laid down by this court in *Parsons* v. *Lyman* (20 N. Y.
103) as modified by statute. In that case the court affirmed
the judgment of the General Term reversing a decree of the
Surrogate's Court, by which that court attempted to distribute
the assets of an estate disposed of by will, which was prop-
erly admitted to probate in the courts of Connecticut, the
court holding that the surrogate should have remitted the pro-
ceeds collected in the county of New York to the courts of
Connecticut for distribution instead of decreeing distribution.
The statute also requires that where ancillary letters are issued
the persons acting thereunder must transmit the assets to the
state, territory or county where the principal letters are
granted. (Code, § 2700.) There have been many cases where
letters have been issued in just such a situation as the statute
describes, and among them is *Parsons* v. *Lyman* (*supra*), but
they need be neither marshalled nor considered, as it is suffi-
cient that the statute declares that the Surrogate's Court has
jurisdiction in such a case as is described in subdivision three.
Examining that subdivision, we see that the surrogate in this
case had jurisdiction provided Mrs. Fitch, who was not a resi-
dent of the state and died without it, left personal property
" within that county and no other." She owned 348 shares
of stock in the Consolidated Gas Company of New York; the
certificates representing the stock were in her possession in
Connecticut at the time of her death, and they passed into
the possession of her executor, who was also a resident of
Connecticut. Was the interest that the decedent had in the

Consolidated Gas Company, represented by the certificates
that she held, " property within that county," *i. e.*, the county
of New York?

In *Matter of Bronson* (*supra*) it was held that a non-resi-
dent shareholder's interest in corporate property situated in
the county of New York is property in that county within
the meaning of the Taxable Transfer Act. It is urged that
while it is true the decedent's interest in the Consolidated Gas
Company is property within this state within the meaning of
the Taxable Transfer Act, that it is not property within the
contemplation of section 2476 of the Code. While much
may be said in support of that contention, and, indeed, has
been said by the learned counsel for the appellant, it is our
view, after an examination of the provisions of section 10 of
the act of 1892 (*supra*), that the Taxable Transfer Act and
the sections of the Code providing for the granting of letters
testamentary and administration, or of ancillary letters, should
be read together as if constituting one enactment. Thus
reading them, the taxing provisions of the act and the pro-
visions providing the machinery for collection of the tax
are in perfect harmony, and that which is held to be property
within the meaning of that portion of the statute which pro-
vides that a tax shall be imposed upon its transfer, is also prop-
erty for the purpose of conferring upon the Surrogate's Court
jurisdiction to impose the tax. But if the Taxable Transfer
Act and the sections of the Code relating to the issue of let-
ters testamentary and of administration be not read together
as one enactment, we are, nevertheless, of the opinion that
the interest which the decedent had in the Consolidated Gas
Company must be held to be property within the meaning of
the word as used in the section of the Code (*supra*).

In *Bronson's Case* (*supra*) the non-resident decedent was
the owner of shares of the capital stock in some corporations,
and of bonds in the same or other corporations incorporated
under the laws of this state, and the bonds, as well as the cer-
tificates, were in the testator's possession at his domicile in
Connecticut. As to non-residents, the statute provided for

the imposition of a tax upon their "property within the state," and the court held ·that the bonds in such corporations were not property within the state, and, therefore, not taxable; that they were debts owing by the corporation, like debts owing by individuals, and were not property of the debtors in any sense, but they were property of the creditor, and being in his possession without the state, they could not, of course, constitute property here.    But as to· the shares in the corporation the court said :  " Shareholders are persons who are interested in the operation of the corporate property and franchises and their shares actually represent undivided interests in the corporate enterprise.    The corporation has a legal title to all the · properties acquired and appurtenant; but it holds them for the ·pecuniary benefit of those persons who hold the capital stock.    They appoint the persons to manage its affairs; they have the right to share in its surplus earnings, and, after dissolution, they have the right to have the assets reduced to money and to have them ratably distributed.    Each share represents a distinct interest in the whole of the corporate property.   *   *   *    Corporate shares must be regarded as property within the broad meaning of that term.    Certificates of stock, in the hands of their holder, represent the number of shares which the corporation acknowledges that he is entitled to." While there was a difference of opinion in the court as to whether bonds constitute property "within the state," there was none whatever as to the shareholder's interest in a corporation created under the laws of this state.    All were agreed in the position expressed by the court in *Jermain* v. *Lake Shore & M. S. R. Co.* (91 N. Y. 483–492), that the certificates of stock in the possession of the·decedent were merely evidence as to the number of shares of stock which the holder had, and that the same rights would have existed whether any certificates had been issued as evidence of those rights or not.    In *Plimpton* v. *Bigelow* (93 N. Y. 592), in an opinion by Judge ANDREWS, it was said :  "The right which a shareholder in a corporation has by reason of his ownership of shares, is a right to participate according to the amount of his stock in the

surplus profits of the corporation on a division, and ulti-
mately on its dissolution, in the assets remaining after pay-
ment of its debts."

The court having decided that in such a case as this the
property of the shareholder is where the corporate property
is, it is quite difficult to see how an assertion to the effect that
such a property is not property within the meaning of section
2476 of the Code, can be supported.   It is true that in this
case there was no occasion for the issuing of letters ; the
legatee was apparently content to accept the certificates of
stock, and the corporation to transfer them on its books, so
that all parties were satisfied.    But it might easily have been
otherwise had the Consolidated Gas Company refused to trans-
fer the shares on its books, as did the Standard Oil Trust, as
appears in the case of *Rice* v. *Rockefeller* (134 N. Y. 174),
where the court held that a mandamus would lie to compel
the transfer.   Mrs. Fitch's executor could not have compelled
this transfer, for a foreign executor cannot, in his representa-
tive capacity, maintain an action either at law or in equity in
this state. (*Schluter* v. *Bowery Savings Bank*, 117 N. Y.
125–129, and cases cited.)

Again, a situation might have been presented during the
period of administration, where the executor would have
deemed it his duty to apply to the Supreme Court to exercise
its general jurisdiction in behalf of the stockholder's common-
law right of inspection of the books of the corporation, as
was done in *Matter of Steinway* (159 N. Y. 250).    Or it
might happen that during the period of administration the
directors of the corporation, unmindful of their duties and
in excess of authority, would execute the promissory notes of
the corporation payable to one of their number, as in the
case of *Metropolitan Elevated R. Co.* v. *Kneeland* (120 N.
Y. 134).    In the first instance it is true it would have been
the duty of the corporation to proceed to protect the stock-
holders from the effect of such *ultra vires* acts.  But it sel-
dom happens that a corporation does thus proceed until after
the election of a new board of directors ; in the meantime,

however, it is the stockholder's right to bring the action. (Cook on Stockholders, § 645.) However, as we have seen, the executor of Mrs. Fitch could not have maintained such proceedings until after obtaining letters in this state.

Other illustrations might be cited showing how, in its practical every-day working out, the interest in corporate property, independent of the certificate itself, is treated as property for the purposes of administration. Whether letters shall be granted presents a question of judicial discretion, not of jurisdiction, as this court said in speaking of the disposition of funds by ancillary administration. (*Matter of Hughes,* 95 N. Y. 55.)

The order should be affirmed, with costs.

All concur.

Order affirmed.