**BLACK EAGLE MINING CO. v. CONROY et al.**

No. 14347—Opinion Filed Nov. 13, 1923.

Rehearing Denied Dec. 18, 1923.

1. **Corporations — Shares of Stock — Status as Personalty.**

Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property.

2. **Same — Certificate of Stock as Evidence of Property.**

A certificate of stock in a corporation is merely the paper representative of an incor-

poreal right, and stands on a footing similar to that of other muniments of title. It is not the property itself, but is merely the symbol or paper evidence of the property, shares of stock.

### 3. Executors and Administrators—Situs of Property—Shares of Corporate Stock.

For the purpose of administration, the situs of shares of stock in a corporation, as evidenced by certificates of stock, is in the state in which the corporation was organized and has its place of business.

### 4. Same — Estate of Nonresident — Right of Creditors to Local Administration.

Where a nonresident died, owning shares of stock in a corporation organized under the laws of this state and having its principal place of business in this state, and foreign administration acquired possession of the certificates of stock, the same does not affect the rights of creditors to have an administrator of the estate of said nonresident appointed in this state, who will have jurisdiction over said shares of stock, which may be subjected to payment of the indebtedness of the deceased, in this state.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Ottawa County; S. C. Fullerton, Judge.

Action by Essie Conroy, M. T. Long, and J. A. Long against the Black Eagle Mining Company. Judgment for plaintiffs, and defendant brings error. Reversed.

Verne E. Thompson, for plaintiff in error.

A. C. Towne and E. C. Fitzgerald, for defendants in error.

Opinion by JARMAN, C. This was an action in the district court of Ottawa county by Essie Conroy, M. T. Long, and J. A. Long against the Black Eagle Mining Company, a corporation, for damages for the alleged conversion of certain shares of stock. The cause was tried to the court without a jury and judgment was rendered for the plaintiffs in the sum of $701, from which the defendant brings error.

The cause was submitted upon an agreed statement of facts, the material portion thereof being as follows:

"The Black Eagle Mining Company is a corporation organized under the laws of Oklahoma and having its headquarters and principal place of business at Miami, Ottawa county, Oklahoma, and the books and records of the corporation and of the shares of stock are kept at Miami; that Jane McSpadden, nee Russell, owned 50 shares of stock in the Black Eagle Mining Company of the par value of $10 each and held Stock Certificate No. 90 issued by the company for said stock; that she owned no property in Oklahoma except this stock; that Mrs. McSpadden was a resident of and died in Sebastian county, Arkansas, in 1920 as the owner of said shares of stock and at the time of her death she had physical possession of the stock certificate; John Conroy was appointed in Sebastian county, Arkansas, as administrator of the estate of Mrs. McSpadden, who took possession of this Stock Certificate and after the estate was administered upon, said Stock Certificate was distributed under orders of the court to the plaintiffs, Essie Conroy, M. T. Long and J. A. Long, sole heirs of Mrs. McSpadden. While administration was pending in Sebastian county, Arkansas, an application was made in the county court of Ottawa county, Oklahoma, by a creditor of Mrs. McSpadden residing in Ottawa county, Oklahoma, for the appointment of an administrator of the estate of Mrs. McSpadden, and Steen M. Johnson was appointed by the county court of Ottawa county, Oklahoma, as such administrator, who filed a petition to procure an order from the county court of Ottawa county to sell the shares of stock of Mrs. McSpadden in the Black Eagle Mining Company for payments of debts due in Ottawa county, said order was granted and the stock was offered for sale and was bid in by J. B. Pinnell and C. H. Pinnell, doing business under the firm name of Pinnell Brothers, for a cash consideration of $350, which sale was confirmed and approved by the county court of Ottawa county, Oklahoma, and an order was made by said court directing that the Black Eagle Mining Company issue certificates to Pinnell Brothers for said stock, which was done."

The defendant contends that the shares of stock of Mrs. McSpadden in the Black Eagle Mining Company are personal property and that the situs of this property, for administration purposes, is in Ottawa county, Okla., the domicile of the corporation. The plaintiffs concede that the shares of stock are personal property but contend that the situs of said property is at the residence of the owner, which was in Sebastian county, Ark., and as the stock certificate was in the physical possession of the owner, Mrs. McSpadden, in Sebastian county, Ark., at the time of her death and passed into the physical possession of the plaintiffs, as heirs, that said plaintiffs became the owners of the shares of stock represented by said certificate.

The main question presented is whether the county court of Ottawa county, Okla., had jurisdiction to administer on the shares of stock of Mrs. McSpadden in the Black Eagle Mining Company. If the county court of Ottawa county had such jurisdiction, then it is by virtue of the third subdivision of section 1088, Comp. Stat. 1921 (6193, Rev. Laws 1910), which provides that letters of administration may be granted in any coun-

ty of the state of Oklahoma, in which any part of the property or estate of the deceased may be, where the decedent died out of the state and was not a resident thereof at the time of his death. In order to determine this question it is necessary to ascertain whether the shares of stock of Mrs. McSpadden in the Black Eagle Mining Company are property in Ottawa county, Okla. In the outset, it is important to note the language used by the statute in defining shares of stock, which is as follows:

"* * * Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property and may be transferred," etc. Section 5318, Comp. Stat. 1921.

It will be observed that it is the shares of stock that are personal property and not the certificates of stock.

There is a distinction between a stock certificate and a share of stock. The certificate is merely the evidence of the ownership of stock, just as a note is the evidence of an indebtedness.

"A stock certificate is merely the paper representative of an incorporeal right, and stands on a footing similar to that of other muniments of title. It is not in itself property, but is merely the symbol or paper evidence of property; hence the proprietory right may exist without a certificate." 10 Cyc. 588.

It is immaterial, therefore, where the stock certificate is located; the thing we are concerned with is the location or domicile of the shares of stock.

By section 5318, Comp. Stat. 1921, shares of stock are defined as personal property. In enacting this statute, the Legislature was acting for Oklahoma, and since shares of stock are personal property in Oklahoma, the county courts of this state have jurisdiction to appoint an administrator of the estate of a nonresident who dies owning stock in an Oklahoma corporation.

It is well settled that shares of stock may, for certain purposes, have a situs at two separate places at the same time, such as rights to title, taxation, etc. 2 Cook on Corporations (7th Ed.) 363. We are dealing with shares of stock as property for the purpose of administration, separate and apart from its owner.

Shares of stock are a peculiar kind of personal property, and are unlike other classes of personal property in that the property right of shares of stock can only be exercised or enforced where the corporation is organized and has its place of business and

can exist, only, as an incident to and connected with the corporation, and, this class of property is inseparable from the domicile of the corporation itself.

"For the purpose of determining where administration is proper, shares of corporate stock have been considered personal property in the county where the corporate property is located. * * *" 18 Cyc. 73.

"It has frequently been said that personal property has no situs, but follows the domicile or person of the owner. This is true to the extent that the law of the domicile is held to govern the succession and descent of personal property of an estate. But this principle does not always apply in determining the location of assets for the purpose of conferring jurisdiction on a court for their administration. * * * It is a general rule that for the purpose of founding administration, all simple contract debts are assets at the domicile of the debtor, and the locality of the debt for this purpose is not affected by a promissory note or bill of exchange having been given for it." 11 R. C. L. 67.

"There has been some question as to whether an action concerning shares of stock should be brought in the home of the holder of the certificates, or where they are located, or in the jurisdiction where the corporation which issued them is located. As the habitation or domicile of the company is and must be in the state that created it, the property represented by its certificates of stock for most purposes properly may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner. The stock of a corporation for which a certificate has been issued to a subscriber or purchaser is, nevertheless, deemed to be in possession of the corporation, and, as property in its possession, may be subjected to proceedings in aid of execution against a stockholder." 7 R. C. L. 167.

"The general rule is that shares of stock in a corporation are personal property, whose location is in the state where the corporation is created. It is true that for purposes of taxation and some other similar purpose stock follows the domicile of the owner; but considered as property separated from its owner, stock is in existence only in the state of the corporation. On this point the Supreme Court of the United States has said: 'The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of the true owner. As the habitation or domicile of the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner.'" 4 Thompson on Corporations (2nd Ed.) sec. 3471.

The Supreme Court of California, in the case of Murphy v. Crouse, 66 Pac. 971, held that shares of stock for the purpose of administration have their situs within the state where the corporation is organized and has its place of business. The facts in that case are similar to those of the instant case; the main question there was, whether the administrator in Minnesota of the estate of the deceased who died in Minnesota in the possession of certificate of shares of stock of the corporation in California had jurisdiction of said shares of stock or whether said shares of stock were under the jurisdiction of the administrator in California, where the corporation was organized and had its place of business. In commenting on this question, the court in the body of the opinion used the following language, to wit:

"And this brings us to the principal contention of the respondent. He contends that shares of stock, negotiable notes, and all choses in action evidenced by writing, have their situs where the owner resides, and when they are in the physical possession of the owner at the time of his death, and pass into the physical possession of the representative, he is the owner, and may transfer them, and such title will be recognized everywhere. Such rule is recognized in some states, and by comity the personal representative has been allowed to collect debts in a foreign jurisdiction when the debtors pay voluntarily, but he cannot sue as executor in such foreign country. No country will allow a foreign court to exercise its jurisdiction within its borders. Perhaps by comity such assignment of a chose in action would be permitted in this state when there is no local administration. But I do not see how an assignment of a foreign executor would be held good here, where we do not admit that the executor himself was vested with title. It is true, however, that for most purposes a chose in action adheres to the person of the owner, but for the purpose of founding administration this is not true. For such purpose the situs is where the debtor resides. For this exception there are at least two good reasons: It may be necessary to bring an action upon notes to enforce payment, and this a foreign administrator or executor cannot do. As to other personal property, it may be necessary to have the aid of the law for its recovery and protection. But the main reason, no doubt, why local administration is provided for, is for the protection of local creditors and claimants. No state should allow property to be taken from its borders until debts due its own citizens have been satisfied. Our statute provides for administration upon the estate of any nonresident who has died, leaving property in this state. To obtain such letters, it is necessary to show that there are creditors, or that the property requires care to preserve it. And a mode is provided for ascertaining whether there are creditors. The administration, though called 'Ancillary' to distinguish it from the administration of the last residence of the decedent, is wholly independent of it."

Counsel for plaintiffs cite some authorities holding the opposite to the propositions above stated, among which being the case of Miller's Estate v. Executrix of Miller's Estate (Kan.) 136 Pac. 255, but the dissenting opinion, 136 Pac. 257, written by Chief Justice Johnston and concurred in by two Associate Justices of the Supreme Court of Kansas, is more in accord with reasoning and with the weight of authority; and we think the conclusion set out in the dissenting opinion is the proper one, to wit:

"In my view the Legislature intended that property such as shares of stock situated in Kansas should be administered in Kansas, and that it was never the legislative intention that property of a decedent should be removed from the state until the debts due to its own citizens had been paid. The officers of the corporation are really the agents and representatives of the owners of the shares wherever they may be, and their claims must be presented in Kansas in order to obtain either the profits in the enterprise or a share of the assets in case of final dissolution and distribution. The property being situated in Kansas, the administrator appointed in Missouri did not acquire any title to the shares, and has no authority to dispose of them."

While the courts are not uniform in their holdings on this question, yet the great weight of authority is in keeping with the holding of the California courts and in keeping with the holding of the Supreme Court of Alabama and other states, wherein it is held:

"For the purpose of administration, the situs of the interest in a corporation, as evidenced by certificates of stock, is in the state in which the corporation was organized and has its place of business; and the fact that a nonresident died owning stock in a corporation organized and having its place of business in this state, and the foreign administration acquired possession of the certificates of stock, does not affect the situs of the interest owned by the decedent in such corporation." Grayson v. Robertson, 122 Ala. 330, 25 South. 229; Winter v. London, 99 Ala. 263, 12 South. 438; Luce v. R. R. Co., 63 N. H. 588, 3 Atl. 618; In Re Fitch, 160 N. Y. 87, 54 N. E. 701; Wyman v. Halstead, 109 U. S. 654, 27 L. Ed. 1068; Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 44 L. Ed. 647; Way v. International Port. Cement Co. (Wash.) 170 Pac. 553.

The Supreme Court of Oklahoma, in the case of Harris v. Ins. Co., 75 Okla. 105, 182 Pac. 85, held that for the purpose of attachment the situs of shares of stock is within Oklahoma, where the corporation re-

sides, and may be lawfully levied upon in such state, though owned by a nonresident. The court, in that case, recognized that shares of stock are property in Oklahoma, where the corporation is organized and transacts its business; otherwise, there would be nothing to attach, and if such shares of stock are property in Oklahoma, then, under section 1088, Comp. Stat. 1921, an administrator could be appointed in Oklahoma and could lawfully and rightfully exercise jurisdiction over such shares of stock.

It would be manifestly unfair to permit persons to organize a corporation under the laws of Oklahoma and incur indebtedness there and later move out of the state and carry their certificates of stock with them and then to hold that their shares of stock in the corporation in Oklahoma are not subject to the jurisdiction of our courts, to protect the creditors.

The county court of Ottawa county, Okla., had jurisdiction to appoint an ancillary administrator of the estate of Mrs. McSpadden, and to subject the shares of stock of Mrs. McSpadden to the payment of her indebtedness in Oklahoma.

The judgment of the trial court is reversed, with instructions to proceed in conformity with this opinion.

By the Court: It is so ordered.