Bernard S. Meyer, J.
Plaintiff wife, receiver in sequestration, seeks an order directing two domestic corporations to turn over to her property which she claims belongs to defendant husband. Defendant was served in Florida with summons and complaint in the underlying separation action but on traverse was adjudged a resident of Florida and not personally subject to the jurisdiction of the court. The action was, however, continued as to the marital res and a sequestration order issued pursuant to the Domestic Relations Law {% 233). In this proceeding plaintiff seeks to reach (1) defendant’s one-third '.tuck interest in Benson Chevrolet, Inc., a New York corporation, (2) defendant’s 100% stock interest in Rolet Realty Corp. a New York corporatoin, (3) amounts payable weekly to defendant by Benson, (4) the sum of $5,000 per month payable by Benson *712 to Eolet, and (5) all funds and assets now in possession or hereafter coming into possession of Eolet. Benson cross-moves for authority to pay to defendant all sums due or to become due as earnings or salary. Plaintiff’s motion is granted to the extent hereafter indicated; Benson’s cross motion is denied.
The papers establish that defendant owns all of the stock of Eolet; that Eolet after merger with another corporation owned a Chevrolet dealership and the real estate in which it is conducted; that Benson purchased the real estate and dealership from Eolet under a contract whereby Benson agreed to pay Eolet $5,000 per month for 16 years or a total of $960,000; that the stockholders of Benson are defendant and S. Alfred Tucker and William Josef sthal, each owning one third of the shares of Benson’s stock; that defendant drew from Benson’s predecessor corporation a salary of $400 per week plus bonuses for a total of $34,000 per year and continues to draw the same amount from Benson; that Josef sthal is president of Benson, defendant is vice-president and Tucker is sales manager; that defendant lives in Florida but is in regular telephone communication with Josefsthal and Tucker concerning the affairs of the business; that defendant, Tucker and Josefsthal on July 24, 1963 entered into a stockholders’ agreement which provides that: the by-laws shall fix the number of directors at three; the by-laws may be changed only by unanimous vote; each of the three shall be a director and hold office as above indicated so long as he remains a stockholder and each agrees to do everything lawful to continue the others as directors and as officers; unanimous vote of the stockholders or directors shall be required for the “ fixing of salaries or other compensation or remuneration of any of the individual parties hereto,” the election or removal of any officer or director, any change in capital structure, and the certificate of incorporation shall be amended to so state; “ Josefsthal and Tucker shall devote their full time and efforts for the benefit of the corporation. Neidorf shall devote to the corporation such time and efforts as he, in his sole discretion, shall determine.”; and “Neidorf shall at all times continue to receive his full salary from the corporation, so long as he is a stockholder thereof, regardless of any disability or incapacitation”. The agreement also contains elaborate provisions restricting transfer of the stock, requiring indorsement of the restriction on the certificates and setting up buy-sell procedures and methods of establishing price. The affidavits in opposition deny that either corporation has any stock certificate belonging to defendant and aver on information and belief that defendant has the certificates with him in Florida.
*713 The Domestic Relations Law (§ 233) provides that when the defendant in a separation action is not within the State the court may make an order requestering “his property, both real and personal and whether tangible or intangible, within the state, and may appoint a receiver thereof, or by injunction or otherwise take the same into its possession and control.” It is settled that the section is “limited to property which, beyond any reasonable question, belongs to the husband” (Rosenberg v. Rosenberg, 259 N. Y. 338, 342); and if arguable controversy exists, plaintiff must proceed by way of plenary action (ibid.; McKendry v. McKendry, 200 Misc. 835, app. dsmd. 108 N. Y. S. 2d 1006; Daniello v. Daniello, 30 Misc 2d 855). That rule disposes of items 4 and 5 above, for, while defendant owns all the stock of Rolet, the corporation is a separate entity which may have creditors and certainly has tax obligations and until it is shown that the corporation has no business substance or purpose and is being used by defendant simply as a shelter, the corporate entity cannot be disregarded.
With respect to the stock interests there is, however, no dispute about defendant’s ownership. On these items, the contention is rather that since the stock certificates are outside the State, sequestration is not permissible. The contention is founded upon the Personal Property Law (§ 174), which provides in pertinent part: “ No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined.” The section is identical with section 13 of the Uniform Stock Transfer Act, and is to be so interpreted and construed as to effectuate the general purpose of the act to make uniform the law of those States which enacted it (Personal Property Law, § 180). Plaintiff argues that since it speaks only of “ attachment or levy ” the section does not bar sequestration; but the similarity of attachment and sequestration was noted in Matthews v. Matthews (240 N. Y. 28, 32, 35; see, also, Albert v. Albert, 199 N. Y. S. 2d 766), and the New Jersey Court of Chancery has applied the section in a sequestration proceeding (Luks v. Luks, 106 N. J. Eq. 160). It applies moreover, even though the stock which is in the possession of a nonresident defendant outside the State is stock of a domestic corporation. (American Surety Co. v. Kasco Mills, 262 N. Y. 585). This is not because the defendant’s interest in the domestic corporation is not property within the State (Holmes v. Camp, 219 N. Y. 359, 369; Matter of Fitch, 160 N. Y. 87, 94; 11 N. Y. Jur., Corporations, § 167, *714 p. 253), but because “until the surrender of the certificates they may come into the hands of a bona fide purchaser for value ” (Sherman v. Sherman, 259 App. Div. 1092). As the Commissioners on Uniform State Laws put it (6 U. L. A. 18): “ if the subsequent purchaser is preferred, it is clearly improper ever to allow an attachment of stock unless some method is adopted to prevent a subsequent transfer of the certificate. Otherwise it is impossible to realize on the attached property since there would always be a possibility of a subsequent transfer of the original certificate.” (Emphasis supplied.) Where the certificate is surrendered or its transfer effectively prevented, both the purpose and the requirement of the Personal Property Law (§ 174) are satisfied. Thus in Crane v. Crane (373 Pa. 1), the Supreme Court of Pennsylvania held that the Uniform Stock Transfer Act section did not prevent seizure of stock in a Pennsylvania corporation registered in the joint names of plaintiff wife and nonresident defendant husband in whose possession outside the State the certificates were, because (p. 6) ‘ the defendant cannot convey title by transfer of the certificate without the joinder of the attaching creditor.” Section 15 of the Uniform Stock Transfer Act (Personal Property Law, § 176) recognizes the validity of a restriction on transfer indorsed on the stock certificate. By their stockholders’ agreement, defendant, Tucker and Josef sthal and the corporation have effectively prevented defendant from transferring his shares in Benson without offering it first to the corporation or to Tucker or Josef sthal and subsequent purchasers are put on notice of that fact by the indorsement of the certificate. It follows here, as it followed in Crane v. Crane (supra), that the Personal Property Law (§ 174) does not bar sequestration of the Benson shares, even though the certificate be in defendant’s possession and be not surrendered. Since, however, there is no similar restraint on transfer of the Rolet shares, section 174 of the Personal Property Law bars a turnover order with respect to them, though section 175 may entitle plaintiff upon application to some assistance even as to them.
There remains for consideration the payments by Benson to defendant. The affidavit of Benson’s president substantiate that these payments are identical in amount with payments made to defendant by the predecessor corporation and are paid by Benson as salary and shown on its accounting records as such. While a number of cases have held that future earnings may not be reached for the payment of alimony by a creditor’s bill in equity (Valentine v. Jno. Williams, Inc., 159 N. Y. S. 815, affd. 179 App. Div. 884, affd. 223 N. Y. 574), or through seques *715 tration (Patterson v. Patterson, 251 App. Div. 272; Rolt-Wheeler v. Rolt-Wheeler, 175 App. Div. 852; Daniello v. Daniello, 30 Misc 2d 855, supra; Kloeppel v. Kloeppel, 172 Misc. 630), none of those eases except Daniello involved an underlying contract and Daniello held simply that since there was a reasonable question concerning whether the payments under the contract were earnings or in redemption of the husband’s stock, a plenary action was necessary.
The rationale of the future earnings cases was either that prospective earnings are not “ property ” within the meaning of the sequestration statute or that earnings, prospective or accrued, could be reached only as provided by statute (Code Civ. Pro., § 1391; Civ. Prac. Act, § 684; CPLR 5231). In light of the comment of the Court of Appeals on the Rolt-Wheeler case (supra) in Morris Plan Ind. Bank of N. Y. v. Gunning (295 N. Y. 324, 330) and particularly in view of the enactment in 1958 of section 49-b of the Personal Property Law, authorizing a wage deduction order in support cases, including matrimonial proceedings, it may well be that the latter objection is no longer valid. Whether that be so or not, the Personal Property Law (§ 49-b) and the reasoning of the earnings cases make clear that there is nothing sacrosanct about earnings qua earnings. That Benson makes the payments in question as earnings will not protect them from sequestration, therefore, if in fact defendant has a property right to them.
Defendant’s right to the weekly payment arises out of corporate action fixing the amount to be paid to him and of the stockholders ’ agreement. Under the agreement, unanimous agreement was necessary to fix the amount and unanimous agreement is necessary to change it. It must, therefore, continue to be paid to defendant unless he consents to its termination or change, except, perhaps, as creditors’ rights may intervene. This being so, and the agreement further providing that defendant alone determines what time he is to devote to the corporation’s business and that disability or incapacitation shall not terminate his right to the payments so long as defendant remains a stockholder, it is somewhat ludicrous to argue, as the corporation does, that the payments are contingent upon the performance of services and not a property right. Termination of the payments without defendant’s consent on the ground that he had ceased to render services would be a clear violation of the stockholders’ agreement to which the corporation is a party. That the payments are to be made in the future does not prevent sequestration of them, if they arise out of a property right (Scott v. Scott, 219 App. Div. 451, app. dsmd. 247 N. Y. 527; *716 Ferguson v. Ferguson, 247 App. Div. 24; Fox v. Fox, 276 App. Div. 859). Nor is the fact that their continuance is contingent on defendant’s remaining a stockholder a bar, for that is a condition subsequent (La Hondere v. La Hondere, 256 App. Div. 942; cf. Fox v. Fox, supra).
The payments are made by the corporation and the stockholders’ agreement gives defendant rights against the corporation, Tucker and Josefsthal with respect to the continuance of the payments. The corporation, Tucker and Josefsthal are all New York residents. It has long been the law of this State that simple contract debts are property where the debtor resides, Fox v. Carr (16 Hun 434). Thus the obligations of the corporation, Tucker and Josefsthal with respect to the payments constitute property within the State (Matter of Riggle, 11 N Y 2d 73; Fishman v. Sanders, 18 A D 2d 689; see Morris Plan Ind. Bank of N. Y. v. Gunning, 295 N. Y. 324, supra; Albert v. Albert, 199 N. Y. S. 2d 766, supra) and can be reached in this proceeding.
While the payments can be reached, it does not follow that plaintiff is entitled to the entire sum. The order to be entered hereon will provide that, if he be so advised, defendant may make application to exclude a portion thereof, “ in the light of his own requirements and those of others who may be dependent upon him ” (Fox v. Fox, 276 App. Div. 859, 861, supra; accord: Ferguson v. Ferguson, supra; Weigold v. Weigold, 236 App. Div. 126). It will also enjoin the corporation and Tucker and Josefsthal from consenting to any change in the payments without further order of this court (Domestic Relations Law, § 233).